**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | Case No. 24-90531 (CML) |
| *Light S.A. - Em Recuperação Judicial*,[1] | ) | |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | Chapter 15 |
| | ) | |

**PETITIONER'S VERIFIED PETITION FOR RECOGNITION OF THE BRAZILIAN**
**PROCEEDING AND MOTION FOR ORDER GRANTING FULL FORCE AND EFFECT**
**TO BRAZILIAN RJ PLAN AND RELATED RELIEF PURSUANT TO**
**11 U.S.C. §§ 105, 1145(a), 1507(a), 1509(b), 1515, 1517, 1520 AND 1521**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this petition was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this petition was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1]     The debtor in this chapter 15 case (the "**Chapter 15 Case**") and the last four digits of the tax number in the jurisdiction in which it pays taxes is Light S.A. - Em Recuperação Judicial (01-75 – Brazil) (the "**Chapter 15 Debtor**").

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................3

BACKGROUND ........................................................................................................8

      A.     General Background and History...........................................................8

      B.     Connections to the United States ..........................................................11

      C.     The Chapter 15 Debtor's Financial Obligations ..................................11

      D.     Events Precipitating Commencement of the Brazilian Proceeding .....12

      E.     The Brazilian Proceeding.....................................................................15

      F.     Creditors' Participation in the Brazilian Proceeding, Execution of RSA, and Approval of the Brazilian RJ Plan......................................16

      G.     Key Terms of the Brazilian RJ Plan Regarding Treatment of Creditors................................................................................................19

      H.     Implementation of the Brazilian RJ Plan and Brazilian Confirmation Order in the United States.....................................................................22

      I.     Subsequent English Proceeding...........................................................22

JURISDICTION, ELIGIBILITY AND VENUE.....................................................24

RELIEF REQUESTED...............................................................................................25

REQUIRED DISCLOSURES ....................................................................................26

BASIS FOR RELIEF .................................................................................................27

    I.     THE PETITIONER HAS SATISFIED THE REQUIREMENTS FOR RECOGNITION OF THE BRAZILIAN PROCEEDING AS A FOREIGN MAIN PROCEEDING..................................................................27

      A.     The Court Has Jurisdiction to Recognize the Brazilian Proceeding and Grant the Relief Requested ................................................................27

      B.     The Requirements of Section 1517(a) of the Bankruptcy Code Are Satisfied................................................................................................28

i

C.      The Brazilian Proceeding Satisfies the Requirements for Recognition
         as a "Foreign Main Proceeding" ..........................................................34

II.      DISCRETIONARY RELIEF UNDER CHAPTER 15 OF THE
         BANKRUPTCY CODE IS WARRANTED AND APPROPRIATE ..............38

         A.      The Court Should Exercise Its Discretion Under Section 105(a), 1507
                 and 1521 of the Bankruptcy Code to Grant the Relief Requested .......38

         B.      The Court Should Exercise Its Authority and Discretion Under Section
                 105, 1145, 1507, and 1521 to Exempt the Chapter 15 Debtor from the
                 U.S. Registration Requirements ..........................................................49

         C.      Enforcement of the Brazilian RJ Plan and Brazilian Confirmation
                 Order Is Not Manifestly Contrary to U.S. Public Policy ....................53

RESERVATION OF RIGHTS ................................................................................55

NOTICE ..................................................................................................................55

NO PRIOR REQUEST ...........................................................................................55

CONCLUSION .......................................................................................................55

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re ABC Learning Ctrs Ltd.*,
728 F.3d 301 (3d Cir. 2013) .......................................................................... 29, 35

*In re ABC Learning Ctrs., Ltd.*,
445 B.R. 318 (Bankr. D. Del. 2010) ...................................................................... 35

*In re Abengoa, S.A.*,
No. 16-10754 (KJC), 2016 Bankr. LEXIS 4678 (Bankr. D. Del. Dec. 8, 2016) ................ 51

*Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B., de C.V. (In re Vitro, S.A.B. de C.V.)*,
470 B.R. 408 (Bankr. N.D. Tex. 2012) .................................................................. 28

*In re AllSaints USA Ltd.*,
No. 20-33072 (MI) (Bankr. S.D. Tex. July 6, 2020) ........................................... 29

*In re Amarex Inc.*,
53 B.R. 12 (Bankr. W.D. Okla. 1985) ................................................................. 52

*In re Americanas S.A.*,
No. 23-10092 (MEW) (Bankr. S.D.N.Y. Mar. 3, 2023) ...................................... 31

*In re Andrade Gutierrez Engenharia S.A.*,
645 B.R. 175 (Bankr. S.D.N.Y. 2022) ................................................................. 32

*In re Aralco S.A. – Indústria e Comércio*,
No. 15-10419 (LGB) (Bankr. S.D.N.Y. Feb. 22, 2022) .................................... 40

*In re Aralco S.A. Indústria e Comércio*,
No. 15-10419 (REG) (Bankr. S.D.N.Y. Apr. 21, 2015) .................................... 54

*In re Artimm, S.r.L.*,
335 B.R. 149, 160 (Bankr. C.D. Cal. 2005) ....................................................... 41

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009) ............................................... 40, 43, 44, 50

*In re Avanti Commc'ns Grp. PLC*,
582 B.R. 603 (Bankr. S.D.N.Y. 2018) .......................................................... 40, 42

i

*In re Bd. of Dirs. of Multicanal S.A.*,
  307 B.R. 384 (Bankr. S.D.N.Y. 2004) ................................................................. 52

*In re Bd. of Dirs. of Telecom Arg. S.A.*,
  No. 05-17811 (BRL), 2006 Bankr. LEXIS 483 (Bankr. S.D.N.Y. Feb. 24, 2006) ............ 54

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
  374 B.R. 122 (Bankr. S.D.N.Y. 2007) ................................................................. 33

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*
  389 B.R. 325 (S.D.N.Y. 2008) .......................................................................... 33

*In re Betcorp Ltd.*,
  400 B.R. 266 (Bankr. D. Nev. 2009) .................................................................. 30

*In re British Am. Ins. Co. Ltd.*,
  425 B.R. 884 (Bankr. S.D. Fla. 2010) ................................................................ 36

*Can. S. Ry. Co. v. Gebhard*,
  109 U.S. 527 (1883) ....................................................................................... 46

*In re CGG S.A.*,
  579 B.R. 716 (Bankr. S.D.N.Y. 2017) ................................................................. 50

*In re Comair Ltd.*,
  No. 21-1029 (JLG), 2021 WL 5312988 (Bankr. S.D.N.Y. Nov. 14, 2021) ...................... 41

*Cunard S.S. Co. v. Salen Reefer Servs. AB*,
  773 F.2d 452 (2d Cir. 1985) ............................................................................. 46

*In re Enjoy S.A.*,
  No. 20-11411 (Bankr. S.D.N.Y. Aug. 25, 2020) ................................................... 50

*In re ENNIA Caribe Holding N.V.*,
  596 B.R. 316 (Bankr. S.D.N.Y. 2019) ................................................................. 41

*In re Grand Prix Assocs.*,
  No. 09-16545 (DHS), 2009 Bankr. LEXIS 1239 (Bankr. D.N.J. May 18, 2009) .............. 36

*In re Int'l Banking Corp. B.S.C.*,
  439 B.R. 614 (Bankr. S.D.N.Y. 2010) ................................................................. 42

*In re Inversora Eléctrica de Buenos Aires S.A.*,
  560 B.R. 650 (Bankr. S.D.N.Y. 2016) ................................................................. 48

*In re Irish Bank Resolution Corp. (Special Liquidation),*
   No. 13-12159 (CSS), 2014 Bankr. LEXIS 1990 (Bankr. D. Del. Apr. 30, 2014) .............. 29

*In re Lines,*
   81 B.R. 267 (Bankr. S.D.N.Y. 1988) ................................................................. 46

*In re Lupatech S.A.,*
   No. 16-11078 (MG) (Bankr. S.D.N.Y. 2016) ......................................................... 48

*In re Markus,*
   610 B.R. 64 (Bankr. S.D.N.Y. 2019) .................................................................. 42

*In re Metcalfe & Mansfield Alternative Invs.,*
   421 B.R. 685 (Bankr. S.D.N.Y. 2010) ................................................................ 54

*MF Glob. Holdings Ltd. v. Allied World Assurance Co. (In re MF Glob. Holdings Ltd.),*
   562 B.R. 55 (Bankr. S.D.N.Y. 2017) ................................................................. 46

*In re Millennium Glob. Emerging Credit Master Fund Ltd.,*
   474 B.R. 88 (Bankr. S.D.N.Y. 2012) ................................................................. 37

*In re Mina Tucano Ltda.,*
   No. 22-11198 (LGB) (Bankr. S.D.N.Y. Oct. 12, 2022) ........................................... 31

*In re MMG LLC,*
   256 B.R. 544 (Bankr. S.D.N.Y. 2000) ................................................................ 46

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.),*
   714 F.3d 127 (2d Cir. 2013) ............................................................................ 35

*In re OAS S.A.,*
   533 B.R. 83 (Bankr. S.D.N.Y. 2015) ............................................... 32, 33, 37, 54

*In re Odebrecht Engenharia e Construção S.A.,*
   No. 20-12741 (Bankr. S.D.N.Y. Dec. 30, 2020) ................................................... 31

*In re Oi Brasil Holdings Coöperatief U.A.,*
   578 B.R. 169 (Bankr. S.D.N.Y. 2017) .......................................................... 32, 37

*In re Oi S.A.,*
   No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 15, 2018) ..................................... 46, 54

*In re Oi S.A.,*
   No. 23-10193 (JPM) (Bankr. S.D.N.Y. June 17, 2024) ................................ 40, 45, 50, 54

*In re Oi S.A.*,
No. 23-10193 (JPM) (Bankr. S.D.N.Y. Mar. 29, 2023) ..................................................... 31

*In re Oi S.A.*,
587 B.R. 253 (Bankr. S.D.N.Y. 2018) .......................................................... 41, 45, 48, 54

*In re Olinda Star Ltd.*,
614 B.R. 28 (Bankr. S.D.N.Y. 2020) ....................................................... 41, 42, 43, 46, 48

*In re PizzaExpress Fin. 2 PLC*,
No. 20-34868 (MI) (Bankr. S.D. Tex. Nov. 3, 2020) ....................................................... 29

*In re Poymanov*,
571 B.R. 24 (Bankr. S.D.N.Y. 2017) ................................................................................ 30

*In re Ran*,
607 F.3d 1017 (5th Cir. 2010) ..................................................................... 29, 33, 35, 36

*In re Rede Energia S.A.*,
No. 14-10078 (SCC) (Bankr. S.D.N.Y. Sept. 9, 2014) .................................................... 46

*In re Rede Energia S.A.*,
515 B.R. 69 (Bankr. S.D.N.Y. 2014) ................................................................................ 54

*In re Rubin*,
160 B.R. 269 (Bankr. S.D.N.Y. 1993) .............................................................................. 46

*Samarco Mineracao S.A. – Em Recuperação Judicial*,
No. 21-10754 (LGB) (Bankr. S.D.N.Y. May 13, 2021) ................................................... 31

*In re Schimmelpenninck*,
183 F.3d 347 (5th Cir. 1999) ........................................................................................... 46

*In re Selecta Fin. UK Ltd.*,
No. 20-34947 (DRJ) (Bankr. S.D. Tex. Oct. 30, 2020) ................................................... 29

*In re Serviços de Petróleo Constellation S.A.*,
No. 18-13952 (MG) (Bankr. S.D.N.Y. Dec. 5, 2019) ...................................................... 54

*In re Serviços de Petróleo Constellation S.A,*
No. 18-13952 (MG) (Bankr. S.D.N.Y. Jan. 14, 2020) ...................................................... 40

*In re Serviços de Petróleo Constellation S.A.*,
No. 18-13952 (MG) (Bankr. S.D.N.Y. May 3, 2022) ....................................... 45, 48, 50, 54

iv

*In re Serviços de Petróleo Constellation S.A.*,
   600 B.R. 237 (Bankr. S.D.N.Y. 2019) .......................................................... 30, 32

*In re Serviços de Petróleo Constellation S.A.*,
   613 B.R. 497 (Bankr. S.D.N.Y. 2020) ................................................................ 37

*In re Sino-Forest Corp.*,
   501 B.R. 655 (Bankr. S.D.N.Y. 2013) ................................................................ 53

*In re SPhinX, Ltd.*,
   351 B.R. 103 (Bankr. S.D.N.Y. 2006) ................................................................ 35

*In re Stanford Int'l Bank, Ltd.*,
   No. 3:09-CV-0721-N, 2012 WL 13093940 (N.D. Tex. July 30, 2012) .............................. 35

*In re Suntech Power Holdings Co., Ltd.*,
   520 B.R. 399 (Bankr. S.D.N.Y. 2014) ................................................................ 37

*In re Toft*,
   453 B.R. 186 (Bankr. S.D.N.Y. 2011) ................................................................ 53

*In re U.S. Steel Can. Inc.*,
   571 B.R. 600 (Bankr. S.D.N.Y. 2017) ................................................................ 40

*In re U.S.J. - Açúcar e Álcool S.A.*,
   No. 22-10320 (DSJ) (Bankr. S.D.N.Y. Apr. 14, 2022) ................................... 31, 40, 46, 48

*In re Vitro, S.A.B. de C.V.*,
   473 B.R. 117 (Bankr. N.D. Tex. 2012) ........................................................... 41, 53

*In re Vitro, S.A.B. de C.V.*,
   701 F.3d 1031 (5th Cir. 2012) ................................................................. *passim*

*In re Yukos Oil Co.*,
   321 B.R. 396 (Bankr. S.D. Tex. 2005) .......................................................... 25, 28

## FEDERAL STATUTES

11 U.S.C. § 101 ........................................................................ 1, 29, 31, 31

11 U.S.C. § 105 ........................................................................ 1, 1, 3, 3, 40

11 U.S.C. § 109 ........................................................................... 25, 27, 27

11 U.S.C. § 306 ................................................................................. 8

11 U.S.C. § 362 ................................................................................................ 11, 26

11 U.S.C. § 1145 .................................................................................................. *passim*

11 U.S.C. § 1501 ................................................................ 5, 28, 39, 39, 55

11 U.S.C. § 1502 ................................................................ 5, 28, 29, 34

11 U.S.C. § 1504 .................................................................................................. 33

11 U.S.C. § 1507 .................................................................................................. *passim*

11 U.S.C. § 1508 .................................................................................................. 55

11 U.S.C. § 1509 ................................................................ 1, 1, 3, 3, 33

11 U.S.C. § 1510 .................................................................................................. 8

11 U.S.C. § 1515 .................................................................................................. *passim*

11 U.S.C. § 1516 .................................................................................................. 34

11 U.S.C. § 1517 .................................................................................................. *passim*

11 U.S.C. § 1519 .................................................................................................. 26

11 U.S.C. § 1520 .................................................................................................. *passim*

11 U.S.C. § 1521 .................................................................................................. *passim*

11 U.S.C. § 1522 .................................................................................................. 41

28 U.S.C. § 157 ................................................................................................ 24, 28

28 U.S.C. § 1334 .............................................................................................. 24, 28

28 U.S.C. § 1408 .................................................................................................. 24

28 U.S.C. § 1409 .................................................................................................. 24

28 U.S.C. § 1410 .................................................................................................. 28

## FEDERAL RULES

Fed. R. Bankr. P. 1007 ........................................................ 4, 25, 26, 32, 34

Fed. R. Bankr. P. 2002 ................................................................**Error! Bookmark not defined.**

Fed. R. Bankr. P. 7007.1 ......................................................................................... 25, 34

Fed. R. Bankr. P. 7052 ................................................................................................... 3

Fed. R. Bankr. P. 9007 ................................................................**Error! Bookmark not defined.**

Fed. R. Bankr. P. 9014 ................................................................................................... 3

## OTHER AUTHORITIES

Kurt A. Mayr, *Using Chapter 15 to Overcome U.S. Securities Law Impediments to Effective Ancillary Relief in Cross-Border Reorganizations*, 15 Norton J. Bankr. L. & Prac. 367, 374 (2006) ................................................................................................... 52

I, Antonio Reinaldo Rabelo Filho (the "**Petitioner**" or "**Foreign Representative**"), the duly-authorized foreign representative of Light S.A. - Em Recuperação Judicial ("**Light**" or the "**Chapter 15 Debtor**") in its judicial reorganization (*recuperação judicial*) proceeding ("**RJ**" or the "**Brazilian Proceeding**") commenced on May 12, 2023 pursuant to Federal Law No. 11.101 of February 9, 2005 (as modified, the "**Brazilian Bankruptcy Law**"), of the laws of the Federative Republic of Brazil ("**Brazil**"), pending before the 3rd Business Court of Rio de Janeiro (the "**Brazilian Court**"),[2] respectfully submit this *Petitioner's Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Full Force and Effect to Brazilian RJ Plan and Related Relief Pursuant to 11 U.S.C. §§ 105, 1145(a), 1507(a), 1509(b), 1515, 1517, 1520 and 1521* (the "**Recognition Motion**").  This Recognition Motion is filed in furtherance of the form of voluntary petition [ECF No. 1] (the "**Form of Petition**" and, together with this Recognition Motion, the "**Petition**").  The Petitioner hereby requests that the Court enter an order substantially in the form attached hereto (the "**Proposed Order**") pursuant to sections 105(a), 1145(a), 1507(a), 1509(b), 1515, 1517, 1520 and 1521 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"):[3]

(a)    granting the Petition in this Chapter 15 Case and recognizing the Brazilian Proceeding as the "foreign main proceeding" for the Chapter 15 Debtor pursuant to section 1517 of the Bankruptcy Code;

(b)    finding that the Petitioner is the duly-appointed "foreign representative" of the Chapter 15 Debtor within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of the Chapter 15 Debtor;

---

[2]    The case number for the Brazilian Proceeding before the Brazilian Court is 0843430-58.2023.8.19.0001.

[3]    Except as otherwise indicated, section and chapter references are to the Bankruptcy Code.

1

(c)        giving full force and effect and granting comity in the United States to the Brazilian RJ Plan and the Brazilian Confirmation Order (each as defined below);

(d)        declaring that the offer and sale (or deemed offer and sale) and, as applicable, the offer and resale of the Exempt Securities (as defined below) are exempt from the registration requirements of Section 5 of the Securities Act of 1933 (the "**Securities Act**") and any State or local law within the United States requiring registration for offer or sale of a security or licensing of an issuer of, underwriter of, or broker or dealer in, a security (the "**U.S. Registration Requirements**") pursuant to section 1145 of the Bankruptcy Code, to the extent a vote on the Brazilian RJ Plan is considered an offer and sale of such securities;

(e)        authorizing and directing the Directed Parties (each as defined below), and any other parties necessary to effectuate the relief requested herein, to take any and all actions necessary to give effect to the terms of the Brazilian RJ Plan;

(f)        exculpating and releasing the Directed Parties from any liability for any action or inaction taken in furtherance of, and/or in accordance with, the Proposed Order or the Brazilian RJ Plan, except for any liability arising from any action or inaction constituting gross negligence, fraud or willful misconduct as determined by this Court;

(g)        permanently enjoining all parties from commencing, continuing, or taking any action in the United States to interfere with the Brazilian Proceeding or the Brazilian RJ Plan, including, without limitation, to obtain possession of, exercise control over, or assert claims against the Chapter 15 Debtor or its property; and

(h)        granting such other and further relief as the Court deems just and proper (collectively, the "**Relief Requested**").

In support of this Recognition Motion, the Petitioner relies upon and incorporates by

reference the *Declaration of Luiz Roberto Ayoub Pursuant to 28 U.S.C. § 1746 in Support of the Petitioner's Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Full Force and Effect to Brazilian RJ Plan and Related Relief Pursuant to 11 U.S.C. §§ 105, 1145(a), 1507(a), 1509(b), 1515, 1517, 1520 and 1521* (the "**Brazilian Counsel Declaration**").   In further support of the relief requested herein, the Petitioner respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      Light is the parent entity of one of the largest electric power corporations in Brazil. Light operates through its wholly-owned subsidiaries, principally Light Serviços de Eletricidade S.A. ("**Light SESA**") and Light Energia S.A. ("**Light Energia**" and, collectively with Light SESA, Light, and other affiliates ("**Affiliates**"), the "**Light Group**"),[4] to provide essential energy distribution, generation, and commercialization services across thirty-one municipalities in the State of Rio de Janeiro and five municipalities in the State of Minas Gerais.   The Light Group's integrated operations serve more than 11 million residents and 4.5 million consumer units, facilitating the provision of approximately 64% of Rio de Janeiro's energy supply.

2.      The Light Group's operations are highly regulated and supervised by the Brazilian government, through Brazil's electricity regulator, Agência Nacional de Energia Elétrica ("**ANEEL**"), the Ministry of Mines and Energy ("**MME**"), Operador Nacional do Sistema Elétrico (Brazil's national grid operator), and other governmental authorities.   The Light Group's energy transmission, distribution, and generation activities are conducted in accordance with concession

---

[4]    The Brazilian Proceeding provides judicial recovery only for the holding company and corporate parent, Light S.A. - Em Recuperação Judicial.  Brazilian Bankruptcy Law does not apply to concessionaries of public electric energy services, including Light SESA and Light Energia.  Brazilian Counsel Decl. ¶¶ 10 n.8, 53 n.14.

agreements entered into with ANEEL and authorizations granted by ANEEL or MME. Specifically, (i) Light SESA holds the Concession Agreement No. 001/96 dated as of June 4, 1996, as amended granting a transmission concession for a specified period ending on June 4, 2025, and (ii) Light Energia holds the Concession Agreement No. 005/2017 dated as of February 1, 2018, as amended, granting a generation concession for a specified period ending on June 4, 2026.  The agreements impose minimum quality standards determined by ANEEL for the generation and distribution of energy, as well as for the improvement of services and required investments in research and development.

3.     Due to several factors, the Light Group has faced severe liquidity constraints in recent years.  Brazilian Counsel Decl. ¶ 52.  These factors primarily include (i) non-technical losses due to rampant energy theft and illegal connections of electric power, (ii) decreased energy consumption, (iii) entry of a judgment requiring the Light Group to refund R$2.8 billion of tax credits to customers, (iv) the macroeconomic deterioration of the concession area in which the Light Group supplies energy, and (v) the COVID-19 pandemic, during which regulatory resolutions prohibited the suspension of energy supply to defaulting residential customers. Accordingly, on April 11, 2023, the Light Group requested provisional relief to suspend the enforceability of some of its financial obligations and to initiate a collective mediation process with creditors.  *Id*.  On April 12, 2023, the Brazilian Court granted the provisional relief and initiated mediation to facilitate the renegotiation of the Light Group's financial obligations and entered a stay to prevent creditors of the Light Group from accelerating debt for a period of thirty days. *Id*.

4.     On May 12, 2023 (the "**RJ Petition Date**"), the Chapter 15 Debtor filed a petition (the "**RJ Petition**") to convert the application for the preliminary injunction into a full

restructuring proceeding with respect to Light only, thereby commencing the Brazilian Proceeding. *Id.* ¶ 53. The RJ Petition did not seek to place Light SESA or Light Energia into RJ because Brazilian Federal Law No. 12,767 prevents energy utility companies that are concessionaires of public services, such as Light SESA and Light Energia, from directly filing a court-supervised reorganization. *Id.* ¶¶ 10 n.8, 53 n.14. Nevertheless, the RJ Petition acknowledged that any creditor action against either Light SESA or Light Energia would have a direct adverse impact on Light, as the holding entity of the Light Group and guarantor under certain debts incurred by Light SESA and Light Energia. *Id.* ¶ 53 n.14. Accordingly, pursuant to the RJ Petition, Light requested an extension of the RJ stay (the "**RJ Stay**") to include Light SESA and Light Energia, which the Brazilian Court granted on May 14, 2023 over the objection of certain creditors, including trustees of certain Brazilian debenture issuances. *Id.* ¶ 54.

5. Over the course of the following year, the Chapter 15 Debtor engaged in lengthy and extensive restructuring negotiations with its creditors and other stakeholders. *Id.* ¶¶ 55-60. These negotiations were at times difficult and contentious and required two extensions of the RJ Stay, a postponement of the general creditors' meeting, and various amendments to the proposed restructuring plan to obtain the requisite creditor approval. *Id.* ¶¶ 55-57. Nevertheless, Light was able to reach an agreement with the vast majority of its creditors regarding its plan of reorganization, including holders of two issuances of previously New York law-governed notes denominated in U.S. Dollars (the "**Existing Notes**" and, such holders, the "**Existing Noteholders**").[5]

---

[5] The two issuances of the Existing Notes are the following: (i) 4.375% Notes due 2026 and issued by Light SESA in the principal amount of US$400,000,000 (the "**Light SESA Notes**"), and (ii) 4.375% Notes due 2026 issued by Light Energia S.A. in the principal amount of US$200,000,000 (the "**Light Energia Notes**," and together with the Light SESA Notes, the "**Existing Notes**," such holders, the "**Existing Noteholders**"). The Existing Notes are governed by that certain indenture dated as of June 18, 2021 (the "**Indenture**") by and between Light Energia S.A. and Light SESA as the Issuers and Light, as guarantor, and The Bank of New York Mellon ("**BNY**" or

6.      On May 18, 2024, Light presented the final version of the RJ plan (the "**Brazilian RJ Plan**") ahead of the general meeting of creditors to be held on May 29, 2024 (the "**GCM**"). *Id*. ¶ 60.  At the GCM, creditors representing 99.1% in amount and 99.4% of the total headcount present at the meeting, including 51% of the Existing Noteholders, voted to approve the Brazilian RJ Plan, satisfying the minimum approval thresholds required under the Brazilian Bankruptcy Law. *Id*. ¶ 61.

7.      On June 18, 2024, the Brazilian Court entered an order (i) finding that the Chapter 15 Debtor had met all the procedural requirements under the Brazilian Bankruptcy Law, (ii) finding the requisite creditor majorities for plan approval had been met, and (iii) confirming the Brazilian RJ Plan (as may be modified pursuant to Brazilian law and in accordance therewith, the "**Brazilian Confirmation Order**").  *Id*. ¶ 64.

8.      Pursuant to the Brazilian RJ Plan, the Chapter 15 Debtor will pursue a capital increase (the "**New Money Capital Raise**") by issuing equity in a minimum amount of R$1 billion (approximately US$194 million) and a maximum amount of up to R$1.5 billion (approximately US$291 million). *Id*. ¶ 68.  All existing shareholders of Light will be entitled to participate in the New Money Capital Raise, and the largest shareholder, Bavaro Fundo de Investimento em Acoes (the "**Anchor Shareholder**"), has agreed to subscribe up to R$1 billion of the new equity, provided the Brazilian RJ Plan is implemented and ANEEL renews its concession agreement with Light SESA. *Id*. ¶ 68.

---

"**Indenture Trustee**") as trustee, paying agent, transfer agent and registrar.  The Light Energia Notes are stapled to the Light SESA Notes (and vice versa), such that they trade proportionally with one another, and the Chapter 15 Debtor is the guarantor for each of the issuances.  Accordingly, all Existing Noteholders are cross-holders who hold claims against both Light SESA and Light Energia, as well as the Chapter 15 Debtor on account of its guarantee.  The Indenture was originally governed by U.S. law (New York) at the date of its execution, but was subsequently amended to change the governing law to English law, as part of the Light Group's restructuring.

9.      The Brazilian RJ Plan further provided creditors with several options for the payment of their affected claims.  Option 1 under the Brazilian RJ Plan ("**Option 1**") will allow creditors to exchange no less than 35% of their claims against Light SESA and guaranteed by the Chapter 15 Debtor (the "**Light SESA Claims**") into convertible instruments of the Chapter 15 Debtor, up to a total amount of R$2.2 billion, and the remainder of the claims that are not exchanged into convertible instruments will be exchanged for new securities to be issued by Light SESA and guaranteed by the Chapter 15 Debtor pursuant to the Brazilian RJ Plan, up to a total amount of R$4.1 billion.  *Id*. ¶ 69.

10.     Alternatively, creditors who do not wish to equitize their Light SESA Claims may choose option 2 under the Brazilian RJ Plan ("**Option 2**"), which will allow creditors to exchange their Light SESA Claims for new securities issued by Light SESA and guaranteed by the Chapter 15 Debtor.  *Id*. ¶ 70.  Any claims in excess of Option 1 thresholds shall be allocated in Option 2. *Id.*

11.     Under both Option 1 and Option 2, claims against Light Energia (the "**Light Energia Claims**") will be exchanged for new securities with substantially similar terms to the current Light Energia Notes (as defined below), but no longer guaranteed by the Chapter 15 Debtor.  In addition, creditors holding Light Energia Notes will be allowed to participate in a reverse auction, under which creditors who submit winning bids will receive an early repayment in cash for the total amount or a portion of their Light Energia Notes up to the maximum amount of R$500 million.  *Id*. ¶ 71.

12.     Finally, creditors who do not affirmatively elect any of the payment options or meet certain conditions under the Brazilian RJ Plan shall receive their recoveries pursuant to the default treatment terms and conditions (the "**Default Treatment**").  *Id.* ¶ 75.  Pursuant to the Default

Treatment, both the Light SESA and the Light Energia claims will be exchanged for restructured claims under the Brazilian RJ Plan with an 80% haircut and due fifteen (15) years after the closing date under the Brazilian RJ Plan.[6]  *Id.*

13.     Accordingly, the Petitioner, on behalf of the Chapter 15 Debtor, commenced the Chapter 15 Case to complete the restructuring contemplated under the Brazilian RJ Plan, facilitate the issuance of the New NY Securities (as defined below) and ensure that the restructuring is binding upon all Existing Noteholders.  To this end, the Petitioner hereby seeks recognition of the Brazilian Proceeding as a foreign main proceeding with respect to the Chapter 15 Debtor, as well as an order granting full force and effect to the Brazilian RJ Plan and the Brazilian Confirmation Order and the other relief described in detail below.[7]

## BACKGROUND

**A.  General Background and History**

*i.     The Light Group's Business Overview*

14.     Light is a publicly-held corporation headquartered in the city of Rio de Janeiro, in the State of Rio de Janeiro, Brazil.  Light's corporate purpose is to hold equity interest, either as partner or shareholder, in other companies that exploit, directly or indirectly, electric power

---

[6]   Restructured Light SESA Claims denominated in Brazilian Reais will accrue interest pursuant to the Brazilian index IPCA, to be paid at maturity.  Other restructured claims will not accrue interest.

[7]   As part of the implementation of the Brazilian RJ Plan, the Light Group, with the consent of 77% Existing Noteholders, entered into an amendment to the Indenture to, among other things, change the governing law of the Existing Notes from U.S. law (New York) to English law to ensure that the Existing Notes are fully restructured by a court-supervised process.  On July 5, 2024, after implementation of the Brazilian RJ Plan and the execution of the amended indenture, the Chapter 15 Debtor commenced a second foreign restructuring, namely a scheme of arrangement pursuant to Part 26 of the United Kingdom Companies Act 2006 in the Chancery Division (Companies List) of the High Court of Justice of England and Wales (the "**English Court**") to facilitate and implement the global restructuring of the Light Group's financial debts (the "**English Proceeding**").  For the avoidance of doubt, although the English Proceeding is an integral part of the Light Group's restructuring, the Foreign Representative does not seek recognition of the English Proceeding in this Chapter 15 Case, but rather seeks relief only with respect to the Brazilian Proceeding, Brazilian RJ Plan, and Brazilian Confirmation Order.

services, including the systems of electric power generation, transmission, commercialization and distribution, as well as other related services.

15.    The Light Group's corporate history traces back to 1905, when Rio de Janeiro Tramway, Light and Power was formed and authorized to provide gas and lighting to the region. Over the course of the following decades, the public utility company expanded by acquiring and unifying urban tram companies operating in Rio de Janeiro and investing in electric buses and telephone operations.  The Light Group was privatized in 1996 and sold at auction to a consortium. In 2005, Light was formed as the holding company for its subsidiaries, including Light SESA and Light Energia, among others.

16.    The Light Group's principal business activities are divided among two segments: (i) distribution, consisting of the transportation of energy from the border of the basic grid to the point of delivery to end-customers by Light SESA, and (ii) generation, whereby Light Energia operates and commercializes clean energy generated from renewable sources through hydroelectric power plants housed in generation complexes in Rio de Janeiro.  The Light Group's business is focused on the state of Rio de Janeiro, where it distributes electricity to thirty-one of the ninety-two municipalities and supplies electricity to approximately 11.6 million people via 87,706 kilometers of transmission and distribution lines.

17.    The Light Group's operations are highly regulated and supervised by the Brazilian government, through Agência Nacional de Energia Elétrica ("**ANEEL**") (Brazil's electricity regulator), the Ministry of Mines and Energy ("**MME**"), Operador Nacional do Sistema Elétrico (Brazil's national grid operator), and other governmental authorities.  The Light Group's energy transmission, distribution, and generation activities are conducted in accordance with concession agreements entered into with ANEEL or authorizations granted by ANEEL or MME.  Specifically,

(i) Light SESA holds the Concession Agreement No. 001/96 dated as of June 4, 1996, as amended, granting a transmission concession for a specified period ending on June 4, 2025, and (ii) Light Energia holds the Concession Agreement No. 005/2017 dated as of February 1, 2018, as amended, granting a generation concession for a specified period ending on June 4, 2026. The agreements impose minimum quality standards determined by ANEEL for the generation and distribution of energy, as well as for the improvement of services and required investments in research and development.

*ii.*     ***Light's Corporate Structure and Offices***

18.     Light's operational and economic activities are located in Brazil. Light is incorporated pursuant to the laws of Brazil, and at all times since its incorporation, has maintained its registered offices in Brazil. Light is managed by a board of directors and board of executive officers, who are located in Rio de Janeiro. Light's bylaws also provide for the installment of a non-permanent fiscal council upon request of shareholders representing at least 2% of Light's voting stock. Light's common shares are listed in the *Novo Mercado* segment of the Brazilian stock exchange and over-the-counter market, and are also traded on the U.S. over-the-counter market, through Level 1 ADRs. Light has no controlling shareholders.

19.     Light's board of directors is comprised of nine independent members, who are advised by four internal committees: (i) the statutory audit committee; (ii) operations and finance committee; (iii) human resource and governance committee; and (iv) sustainability committee, each of which guarantees adaptability and efficiency by the board. The board of executive officers may comprise up to eight executive officers, who are the Light Group's legal representatives and are principally responsible for day-to-day management and for implementing policies and guidelines set by the board of directors. The Light Group currently employs more than 13,800

10

employees and is also indirectly responsible for the employment of thousands of other people.

20.    Every aspect of Light's operations, finances, corporate management, employee management and payroll, and short- and long-term strategic planning is directed from its administrative office in Rio de Janeiro, Brazil.  Additionally, Light files its taxes in Brazil, its managers are based in Brazil, and its board of directors', officers' and shareholders' meetings are all held in Brazil.

### B.  Connections to the United States

21.    Substantially all of the Chapter 15 Debtor's assets are located in Brazil. Additionally, Light holds cash in a trust account in Houston, Texas with White & Case LLP, the Chapter 15 Debtor's U.S. counsel, in connection with the filing of this Chapter 15 Case, with an aggregate balance of US$4,985 (the "**Texas Escrow Account**").  Further, Light's shares are traded on the over-the counter market, through Level 1 ADRs.

### C.  The Chapter 15 Debtor's Financial Obligations

22.    As of the date prior to the GCM, the Chapter 15 Debtor had aggregate assets of approximately US$582.1 million (approximately R$3.0 billion) and was liable for approximately US$2.12 billion (approximately R$10.9 billion) of indebtedness (collectively, the "**Prepetition Debt**").[8]

23.    Specifically, as of the date prior to the GCM, the Chapter 15 Debtor is an obligor on the following third-party indebtedness, all of which is also subject to the Brazilian Proceeding:

(i)    Debentures issued by Light SESA and guaranteed by Light in the 9th, 15th, 16th, 17th, 19th, 20th, 21st, 22nd, 23rd, 24th and 25th issuances totaling approximately R$6.42 billion;

(ii)   Credit Agreement with Banco Citibank S.A. as lender, the outstanding

---

[8]    The foreign exchange rate used in the amounts in this Recognition Motion is 5.1538:1 from R$ to US$ as of May 28, 2024.

amount of which is approximately R$200.2 million;

(iii)    Seven issuances of domestic bonds issued by Light Energia and guaranteed by Light, totaling approximately R$579 million;

(iv)    Derivative operations of Light SESA and Light Energia, guaranteed by Light, whose total balance amounts to approximately R$653 million; and

(v)    Existing Notes issued by Light SESA and Light Energia, both guaranteed by Light, in the principal amount of US$600,000,000.

With the exception of the Existing Notes, the Chapter 15 Debtor's indebtedness is governed by Brazilian law. The following approximate amounts (including accrued interest) remained outstanding under the Prepetition Debt as of the date prior to the GCM:

| Prepetition Debt | Outstanding Amounts |
|---|---|
| Domestic Bonds (Light SESA) | US$1,245,899,444.49 (R$6,421,116,557.00) |
| Credit Agreement | US$38,513,817.03 (R$198,492,510.22) |
| Domestic Bonds (Light Energia) | US$112,514,111.96 (R$579,875,230.22) |
| Derivative Financial Instruments | US$126,761,549.81 (R$653,303,675.41) |
| Existing Notes | US$600,000,000 (R$3,092,280,000.00) |
| **TOTAL** | **US$2,123,688,923.29 (R$10,945,067,972.85)** |

### D. Events Precipitating Commencement of the Brazilian Proceeding

#### i.    *Energy Losses*

24.    Despite the Chapter 15 Debtor's efforts to comply with its financial obligations and to maintain the public electric power supply in the State of Rio de Janeiro, adverse conditions beyond its control impaired the Chapter 15 Debtor's business and caused significant operational challenges. The Light Group's concession area has historically been subject to high levels of loss due to complexities and difficulties inherent to the territory that the concession area encompasses.

25.     For several years, the Light Group has contended with high rates of losses that occur in the distribution of energy caused by fraud, theft, faulty metering, and problems with operational processes, including those related to connections, recording, metering or billing of customers' facilities.  These non-technical losses correspond primarily to increasing theft of electric power and clandestine connections in concession areas dominated by paramilitary criminal groups.

26.     In 2021 alone, losses resulting from energy theft totaled approximately R$680 million.  In the same year, the Light Group directed approximately 30% of its investments, amounting to over R$390 million, toward combating and preventing energy theft.  The Light Group incurred similar losses in 2022.  Despite these investments, the situation has become increasingly uncontrollable, especially due to the expansion of organized crime in Rio de Janeiro. The Light Group continues to incur non-technical losses across all neighborhoods of the concession area.

27.     Moreover, the Light Group has incurred substantial losses due to decreased levels of energy consumption in Rio de Janeiro.  In the period between 2013 and 2022, energy consumption in the state decreased by 12.5%.  Coupled with the high rate of non-technical losses and increased expenditures to combat energy theft, this decrease in invoiced energy consumption has worsened the Light Group's liquidity crisis.

### ii.     Tax Credits

28.     On top of the operational difficulties experienced by the Light Group, the Chapter 15 Debtor has experienced substantial losses due to the promulgation of Law No. 14,385 by ANEEL on June 27, 2022.  Pursuant to this law, ANEEL directed the Light Group to return tax credits related to the undue collection of PIS/COFINS (Contribution to the Social Integration Program/Contribution for the Social Security Funding) from consumers, after the retroactive

13

exclusion of ICMS (State Value-Added Tax on Goods and Services) from the calculation based on electric power bills.

29.     To date, the Light Group has refunded R$374.2 million in credits in 2021 and R$1.05 billion in 2022.  At the end of fiscal year 2022, there was an extraordinary tariff review of negative 5.89% resulting from these returns.  A significant amount remains outstanding on this obligation, which will necessarily require the Light Group to offer services to many customers at substantially discounted rates.

30.     The various factors substantially increased the Chapter 15 Debtor's costs of operations, threatening irreversible and immeasurable damage to the State of Rio de Janeiro.

### iii.     The Light Group's Liquidity Constraints

31.     The decrease in invoiced consumption experienced by the Chapter 15 Debtor as described above severely impacted the Chapter 15 Debtor's cash flow.  By March 31, 2023, the Light Group had cash and cash equivalents of US$5.6 million (R$28.9 million), approximately US$3.4 million less in comparison with December 31, 2022.

32.     Despite attempts to normalize its business, the Chapter 15 Debtor's liquidity was worsened by the significant increase in the expenditures to combat rampant energy theft as mentioned above. Further, the Chapter 15 Debtor incurred additional capital expenditures with substantial financial constraints, which decreased the Chapter15 Debtor's access to further liquidity.

33.     Further, as noted above, Light SESA's concession for distribution and Light Energia's concession for electricity generation expire on June 4, 2026.  While the Light Group began negotiations with ANEEL for the renewal of its concessions, ANEEL placed the light Group in a specialized monitoring scheme through which ANEEL could monitor the Light Group's

economic and financial condition to ensure the sustainability of the concessions and the provision of adequate service to customers.  The uncertainty of whether ANEEL would renew the Light Group's concessions made it difficult for creditors to agree to a debt refinancing.

### iv.      Creditors' Actions in Brazil

34.      Once these aggravating factors were presented on balance sheets published on March 28, 2023, the results were interpreted as a crisis, leading Fitch to downgrade the Chapter 15 Debtor's rating.  This downgrade caused some creditors to initiate extra-contractual measures to accelerate repayment, taking advantage of a contractual provision that authorized certain creditors to advance the maturity of their entire debt, some of which relates to the assets of Brazilian workers.

### E.  The Brazilian Proceeding

35.      Aware of the alarming risk of acceleration on additional debt, the Chapter 15 Debtor took steps to maintain the balance of its agreements based on a consensual solution with its creditors.  On April 10, 2023, the Light Group filed a motion seeking a precautionary injunction to suspend the enforceability of some of its financial obligations and to initiate a collective mediation process with creditors under Article 2, VII of Law No. 13.140/2015.  On April 12, 2023, the Brazilian Court granted the motion and entered a provisional injunction for a period of thirty days (the "**Provisional Injunction**").  Brazilian Counsel Decl. ¶ 52.

36.      The Provisional Injunction ordered that a 30-day mediation proceeding be commenced between the Light Group and the affected creditors to facilitate the renegotiation of financial obligations.  *Id.*  The Light Group sought to engage with its creditors in this mediation process, but was unable to reach a consensual resolution during this short timeframe.  *Id.*

37.      In light of the above, the Chapter 15 Debtor commenced the Brazilian Proceeding

on the RJ Petition Date, seeking to amend the prior injunction and extending the stay to the Light Group so as to stabilize its business and encourage further negotiations with its creditors, in furtherance of a value-maximizing solution.  *Id.* ¶ 53.  The RJ Petition does not seek judicial recovery for either Light SESA or Light Energia because under Law No. 12,767 in Brazil, energy utility companies, including Light SESA and Light Energia, are prevented from directly filing a court-supervised reorganization or out-of-court reorganization.  *Id*. ¶¶ 10 n.8, 53 n.14. Nevertheless, the RJ Petition acknowledged that any creditor action against either Light SESA or Light Energia would have a direct adverse impact on Light, as the holding entity of the Light Group and guarantor under certain debts incurred by Light SESA and Light Energia. *Id*. ¶ 53 n.14.

38.     On May 15, 2023, the Brazilian Court entered the order accepting the RJ Petition (the "**Brazilian Acceptance Order**").  *Id*. ¶ 54.  The Brazilian Acceptance Order upheld several protective measures on a final basis, including the suspension of the effects of all acceleration provisions in Light's debt documents and a stay against any enforcement actions and orders attaching assets or rights of Light.  *Id*.   In addition, the Brazilian Court named Licks Contadores Associados as judicial administrators for the case.  *Id.*[9]

### F.  Creditors' Participation in the Brazilian Proceeding, Execution of RSA, and Approval of the Brazilian RJ Plan

39.     On July 14, 2023, the Chapter 15 Debtor presented its first version of an RJ plan that proposed to establish the terms and conditions relating to the main measures that may be adopted in order to overcome the Chapter 15 Debtor's current economic and financial situation and its impacts on the Light Group.  *Id*. ¶ 55.  Certain creditors expressed  their dissatisfaction with

---

[9]     Given the complexity of the legal matters involved in the Brazilian Proceeding, on September 19, 2023, the Brazilian Court appointed Luciano Bandeira Advogados Associados as additional judicial administrator alongside Licks Contadores Associados (together, the "**Joint Administrators**").  *Id*. ¶ 54 n.16.  Appointment of Luciano Bandeira Advogados Associados as a Judicial Administrator was confirmed on September 26, 2023.  *Id.*

the RJ plan. *Id.* ¶ 55. Creditors then engaged in discussions with Light's largest shareholder to negotiate amended terms of the RJ plan. *Id.* ¶ 55.

40.     While negotiations with creditors regarding the terms of the RJ plan were ongoing, on October 1, 2023, Light Energia petitioned the Brazilian Court to allow a partial withdrawal from the RJ Stay due to progress in negotiations with certain creditors and other stakeholders regarding an out-of-court restructuring. *Id.* ¶ 56. On October 9, 2023, Light requested a 180-day extension of the RJ Stay with respect to itself and Light SESA until April 17, 2024 to finalize its ongoing restructuring negotiations with creditors, which the Brazilian Court granted the following day. *Id.* ¶ 56. In its order, the Brazilian Court also instructed the Judicial Administrators to convene a GCM to deliberate on the RJ plan amidst multiple creditor-led objections to the proposal. *Id.* ¶ 56. Subsequently, the Judicial Administrators announced the dates for the GCM and set March 21, 2024 as the first call and March 28, 2024 as the second call.[10] *Id.* ¶ 56.

41.     On February 23, 2024, Light released an updated version of the RJ plan proposal. *Id.* ¶ 57. While the amended RJ plan had the approval of Light's board of directors and was developed with a view toward a consensual resolution with Light's creditors and stakeholders, certain debenture holders remained unsatisfied with the revised terms. *Id.* ¶ 57. Given the status of negotiations, the Brazilian Court agreed to postpone the GCM to April 25, 2024 for the first call and May 3, 2024 for the second call. *Id.* ¶ 57. On April 19, 2024, the Brazilian Court also granted a 90-day extension of the RJ Stay with respect to Light and Light SESA until July 8, 2024. *Id.* ¶ 57.

42.     As a result of the combined efforts of the Light Group and its creditors, on April

---

[10]     The Brazilian Court's order provided that if creditors holding more than 50% of the claims subject to the Brazilian Proceeding appeared at the first call of the meeting, then the GCM would proceed on that date. If not, then the GCM would proceed on the second call date. *Id.* ¶ 56 n.17.

11, 2024, Light released a term sheet that was agreed upon with an ad hoc group of Brazilian debenture holders, and on April 22, 2024, such parties executed a restructuring support agreement (the "**Brazilian RSA**").  *Id*. ¶ 58.  Light also presented an amended version of the RJ plan that contemplated a capital increase from Light's anchor shareholders, capitalization of specific claims via convertible and non-convertible debt instruments, and full payment to creditors whose claims as of May 12, 2023 amounted to up to R$30,000 (approximately US$5,820).  *Id*. ¶ 58.

43.     At the April 25, 2024 GCM, creditors voted to postpone the GCM to May 29, 2024 to provide additional time to review the terms of the RJ plan.  *Id*. ¶ 59.  Following continued discussions with key stakeholders, on May 9, 2024, Light executed a term sheet (the "**Noteholder Term Sheet**") that outlined the preliminary agreement with an ad hoc group of creditors holding roughly 41% of the Existing Notes (the "**Ad Hoc Group**") that would ultimately be incorporated in the RJ plan.

44.     On May 18, 2024, Light released the final version of the RJ plan (the "**Brazilian RJ Plan**").[11]  *Id*. ¶ 60.  The Noteholder Term Sheet was superseded by a "**Supplemental Noteholder Term Sheet**," presented to creditors at the GCM held on May 29, 2024 in connection with the Brazilian RJ Plan.  During the GCM on May 29, 2024, 99.4% of creditors by headcount representing 99.1% in value voted to approve the Brazilian RJ Plan.  Brazilian Counsel Decl. ¶ 61. Following creditor approval of the Brazilian RJ Plan at the GCM, the Judicial Administrators prepared a report summarizing the process and outcome of the GCM and tabulation of the votes, which were made public through the Brazilian Court's website.  *Id.* ¶ 63.

45.     On June 18, 2024, the Brazilian Court found that the Chapter 15 Debtor had

---

[11]     A Portuguese copy of the Brazilian RJ Plan and a certified English translation thereof is attached to the Brazilian Counsel Declaration as Exhibit C.

satisfied all the requirements under the Brazilian Bankruptcy Law, and entered the Brazilian Confirmation Order.[12]  *Id*. ¶ 64.

### G.  Key Terms of the Brazilian RJ Plan Regarding Treatment of Creditors

46.     Consistent with the terms of the Brazilian RSA, Noteholder RSA, and Supplemental Noteholder Term Sheet, the Brazilian RJ Plan is premised on the issuance of convertible and non-convertible securities (the "**New Securities**") that may be governed by either Brazilian or New York law (such New York law-governed New Securities, the "**Exempt Securities**"), as well as a capital increase ranging from R$1 billion (US$194 million) to R$1.5 billion (the "**Capital Raise**"), with up to R$1 billion of that new capital committed by the Anchor Shareholder.  *Id*. ¶ 68.

47.     The Brazilian RJ Plan provided creditors with several options for the payment of their affected claims.  *Id*. ¶ 69.  Option 1 will allow creditors to convert no less than 35% of their Light SESA Claims into equity of the Chapter 15 Debtor, up to a total amount of R$2.2 billion (the "**Required Conversion Amount**").[13]  *Id*.  The equitized claims will be exchanged for new convertible securities to be issued by the Chapter 15 Debtor (the "**New Convertible Securities**"). *Id*.  The New Convertible Securities will be mandatorily converted into equity ninety (90) days after Light SESA obtains the renewal of its concession with ANEEL (the "**Concession Renewal**"), provided that the Capital Raise also occurs.  *Id*.  The remainder of the Light SESA Claims that are not converted will be exchanged for new priority securities to be issued by Light SESA and guaranteed by the Chapter 15 Debtor pursuant to the Brazilian RJ Plan (the "**New Priority Light**

---

[12]    A Portuguese copy of the Brazilian Confirmation Order and a certified English translation thereof is attached to the Brazilian Counsel Declaration as Exhibit E.

[13]    To the extent the total amount of claims to be converted by creditors choosing Option 1 exceeds the Required Conversion Amount, the excess amount will be reduced pro rata between all converting creditors.

SESA Securities"), up to R\$4.1 billion (the "**New Priority Securities Cap**").[14]  *Id*.  The New Priority Light SESA Securities will receive a first-priority lien on certain assets of Light SESA and will be paid in ten (10) equal semi-annual installments starting forty-two (42) months after the closing date of the RJ Plan (the "**Closing Date**").  *Id*.  Interest will accrue on the New Priority Light SESA Securities at a rate of 4.21% per annum[15] and be paid semi-annually, starting 6 months after the Closing Date.  *Id*.

48.     Alternatively, Option 2 is available to creditors who do not wish to equitize their Light SESA Claims, which will allow creditors to exchange their Light SESA Claims in a dollar-for-dollar basis for new securities issued by Light SESA and guaranteed by the Chapter 15 Debtor (the "**New Light SESA Securities**").[16]  *Id*. ¶ 70.  The New Light SESA Securities will receive a second-priority lien on the same collateral of the New Priority Light SESA Securities and will be paid in twenty (20) semi-annual installments starting forty-two (42) months after the Closing Date.  *Id*.  Interest will accrue at a rate or 2.26% per annum[17] and will be paid semi-annually starting eighteen (18) months after the Closing Date.  *Id*.  To the extent the total amount of claims subject to Option 1 exceeds the New Priority Securities Cap, the excess amounts will be paid to creditors under Option 2.  *Id.*

49.     Under both Option 1 and Option 2, claims held by creditors against Light Energia

---

[14]   If the total amount of Light SESA claims to be exchanged for New Priority Light SESA Securities exceeds the New Priorities Securities Cap, the excess claims will be exchanged for New Light SESA Securities (as defined above) instead.

[15]   The interest rate of 4.21% per annum shall apply with respect to New Priority Light SESA Securities governed by New York law.

[16]   If the total amount of claims to be converted under Option 1 does not reach the Required Conversion Amount, the difference will be reduced, pro rata amongst all creditors, from the total amount of New Light SESA Securities to be issued by Light SESA.

[17]   The interest rate of 2.26% per annum shall apply with respect to New Light SESA Securities governed by New York law.

(the "**Light Energia Claims**") will be exchanged by new securities under substantially similar terms of the Light Energia Notes, but no longer guaranteed by the Chapter 15 Debtor (the "**New Light Energia Securities**").  *Id*. ¶ 71.  The New Light Energia Securities will be fully decoupled from the new securities to be issued by Light SESA.  *Id*.  Creditors holding New Light Energia Securities will also be given the opportunity to participate in a reverse auction, whereby such creditors may opt to receive an early cash redemption of their Light Energia Claims at a discount, starting with a 5% minimum bid.  *Id.*  Light Energia will pay cash out starting with the lowest bidders, up to a maximum total amount of R$500 million.  *Id*.

50.     To select either Option 1 or Option 2, creditors must agree to certain conditions under the Brazilian RJ Plan, among which is compliance with a commitment to not litigate against the Light Group, pursuant to Section 10.4 of the Brazilian RJ Plan.  *Id*. ¶ 72.

51.     The RJ Plan provided that local unsecured creditors who hold claims up to R$30,000 would be repaid in full, without any adjustment.  *Id*. ¶ 73.  Such payment took place on September 13, 2024.

52.     Financial creditors, including banks holding certain Light SESA Claims, that comply with the non-litigation commitment provision in the Brazilian RJ Plan will have the right to elect to be repaid with specific non-convertible securities for up to R$670 million.  *Id*. ¶ 74. Such creditors must commit to providing, upon request from Light, Light SESA or Light Energia, currency and/or interest rate derivative lines with a notional value equal to or greater than their respective unsecured claims for a minimum period of three-hundred and sixty-five (365) days.  *Id*.

53.     Finally, creditors who do not affirmatively elect any of the payment options or meet certain conditions under the Brazilian RJ Plan shall receive their recoveries pursuant to the default treatment terms and conditions (the "**Default Treatment**").  *Id*. ¶ 75.  Pursuant to the Default

Treatment, both the Light SESA Claims and the Light Energia Claims will be exchanged by restructured claims under the Brazilian RJ Plan, pursuant to new securities to be issued by the Chapter 15 Debtor, with an 80% haircut and due fifteen (15) years after the closing date under the Brazilian RJ Plan, without interest. *Id.*  Restructured Light SESA Claims denominated in Brazilian Reais will accrue interest pursuant to the Brazilian index IPCA, payable at maturity, whereas other restructured claims denominated in U.S. Dollars will not accrue interest. *Id.*

### H.  Implementation of the Brazilian RJ Plan and Brazilian Confirmation Order in the United States

54.     The Brazilian Confirmation Order and Brazilian RJ Plan are in full force and effect and have not been stayed by any court. *Id.* ¶ 76.  Under the Brazilian Bankruptcy Law, within five (5) days after publication of the Brazilian Confirmation Order in the Brazilian official gazette, creditors may present the court a motion for clarification and, within fifteen (15) days of publication of the Brazilian Confirmation Order (or the decision on a motion for clarification, if one is filed) the creditors may file an interlocutory appeal to the appellate court. *Id.* ¶ 35.

55.     On June 25, 2024, creditor Banco do Brasil filed a motion with the Brazilian Court challenging certain provisions of the Brazilian RJ Plan and seeking a nullification of the Confirmation Order. *Id.* ¶ 65.  As of the date hereof, Banco do Brasil's motion is pending judicial decision. *Id.*  Accordingly, the Brazilian RJ Plan remains in full effect and is enforceable as a matter of Brazilian law. *Id.* ¶ 76.

### I.  Subsequent English Proceeding

56.     To ensure that the restructuring of the Existing Notes would be recognized and enforced outside of Brazil with respect to both Light Energia and Light SESA, and as required under the Brazilian RJ Plan, the Light Group and Ad Hoc Group agreed to pursue a complimentary scheme of arrangement under English law for the Existing Notes. *Id.* ¶ 77.  Accordingly, on July

5, 2024, the Chapter 15 Debtor commenced the English Proceeding to facilitate and implement the global restructuring of the Existing Notes. To support the English Proceeding, on June 28, 2024, the Ad Hoc Group entered into the Noteholder RSA whereby the signatories committed to vote in favor of the English Proceeding, among other obligations. The Light Group subsequently extended the possibility to accede to the Noteholder RSA to all Existing Noteholders.

57.    The English Proceeding, if approved, will restructure the Existing Notes with respect to Light as well as Light SESA and Light Energia, as a function of English law. The English Proceeding provides terms that are consistent with the Brazilian RJ Plan, and the Existing Noteholders have been presented with the opportunity to choose among exactly the same payment options as the other creditors subject to the Brazilian RJ Plan, with an additional feature: Existing Noteholders are given the opportunity to receive, with respect to their Light SESA Claims, New Securities governed by New York law. The Existing Notes will then be cancelled upon the distribution of the recoveries chosen by the Existing Noteholders at closing of the Light Group's restructuring.

58.    The Existing Noteholders shall directly or by their agent, (i) vote on whether to approve the English Proceeding, and (ii) elect one of the payment options, pursuant to the procedures set forth in the English Proceeding and a rights and exchange offering memorandum (together with Exhibits attached thereto, the "**Offering Memorandum**"), attached hereto as **<u>Exhibit B</u>**. To enable Existing Noteholders to vote on the English Proceeding and choose their preferred payment option, on August 5, 2024, the Chapter 15 Debtor launched an election solicitation process through the clearing system of Depository Trust Company ("**DTC**") (such process, the "**Election Solicitation**"). The Chapter 15 Debtor, through its information and subscription agent, DF King & Co., Inc. ("**DF King**"), caused notices to be provided to the Existing

23

Noteholders regarding the Election Solicitation.  The Election Solicitation will also enable the Chapter 15 Debtor to consolidate the Existing Noteholders' payment choices and distributions, as opposed to dealing with multiple individual choices and payments.  The Election Solicitation will remain open for Existing Noteholders to cast their votes and payment elections electronically until October 15, 2024, which is the date preceding the meeting on which the votes will be recorded for purposes of determining whether the English Proceeding is approved.

*      *      *

59.    The filing of this Chapter 15 Case is crucial to ensure certain steps are taken to complete the Light Group's global restructuring.  In particular, the relief requested through this Chapter 15 Case ensures that the Directed Parties (as defined below) take all of the actions needed to practically implement the Brazilian RJ Plan, including the issuance of the Exempted Securities and the full cancellation of the Existing Notes.  Further, it is imperative that the Exempt Securities are exempted from any applicable U.S. Registration Requirements to avoid the prohibitive cost expense and time-consuming process of filing a registration statement, a process that is likely to cost several million dollars, take six (6) or more months to complete, and which will ultimately be deleterious to the Chapter 15 Debtor's substantial restructuring efforts.

## JURISDICTION, ELIGIBILITY AND VENUE

60.    The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Foreign Representative confirms his consent to the entry of a final order by the Court.

61.    Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.

62.    The predicates for the relief requested herein are sections 105, 1145(a), 1507(a),

24

1509(b), 1515, 1517, 1520 and 1521 of title 11 of the United States Code (the "**Bankruptcy Code**"), and rules 1007(a) and 7007.1 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

63.     The presence of assets within the United States renders the Chapter 15 Debtor eligible to file the Chapter 15 Case pursuant to section 109(a) of the Bankruptcy Code.  *See In re Yukos Oil Co.*, 321 B.R. 396, 407 (Bankr. S.D. Tex. 2005) (stating that courts routinely hold that nominal amounts of property located in the United States enable foreign corporations to qualify as debtors under section 109(a) of the Bankruptcy Code) (citations omitted).

## RELIEF REQUESTED

64.     The Petitioner requests that this Court enter an order, substantially in the form of the Proposed Order attached hereto and pursuant to sections 105(a), 1507, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code:

(a)     granting the Petition in the Chapter 15 Case and recognizing the Brazilian Proceeding as the "foreign main proceeding" for the Chapter 15 Debtor pursuant to section 1517 of the Bankruptcy Code;

(b)     finding that the Petitioner is the duly appointed "foreign representative" of the Chapter 15 Debtor within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of the Chapter 15 Debtor in the Chapter 15 Case;

(c)     giving full force and effect and granting comity in the United States to the Brazilian RJ Plan and the Brazilian Confirmation Order;

(d)     declaring that the offer and sale (or deemed offer and sale) and, as applicable, the offer and resale of the Exempt Securities are exempt from the U.S. Registration Requirements pursuant to section 1145 of the Bankruptcy Code, to the extent a vote on the Brazilian RJ Plan is considered an offer and sale of such securities;

(e)     authorizing and directing the Directed Parties (each as defined below), and any other parties necessary to effectuate the relief requested herein, to take any and all actions necessary to give effect to the terms of the Brazilian RJ Plan;

(f)     exculpating and releasing the Directed Parties from any liability for any action or inaction taken in furtherance of, and/or in accordance with, the Proposed Order or

the Brazilian RJ Plan, except for any liability arising from any action or inaction constituting gross negligence, fraud or willful misconduct as determined by this Court;

(g)    permanently enjoining all parties from commencing, continuing, or taking any action in the United States to interfere with the Brazilian Proceeding or the Brazilian RJ Plan, including, without limitation, to obtain possession of, exercise control over, or assert claims against the Chapter 15 Debtor or its property; and

(h)    granting such other and further relief as the Court deems just and proper.

## REQUIRED DISCLOSURES

65.    The Petitioner hereby provides the following disclosures in accordance with Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"):

(a)    the following disclosure identifies any corporation, other than a governmental unit, that directly or indirectly owns 10% or more of any class of the Chapter 15 Debtor's equity interests as of the commencement of the Chapter 15 Case:

    (i)    20.01% of Light's equity is directly owned by Samambaia FIA;

    (ii)    10.16% of Light's equity is directly owned by Santander PB FIA 1; and

    (iii)    35.03% of Light's equity is directly owned by WNT Gestora de Recursos Ltd.

(b)    Other than the Brazilian Proceeding, the English Proceeding is the only other foreign proceeding, as that term is defined in section 101(23) of the Bankruptcy Code, of the Chapter 15 Debtor presently open at the time of commencement of the Chapter 15 Case;

(c)    Other than the Petition, the Chapter 15 Debtor does not have a pending petition with this Court for relief under any chapter of the Bankruptcy Code;

(d)    In the Brazilian Proceeding, the Chapter 15 Debtor will remain in possession of its assets and attend to its own affairs, and aside from the Petitioner with respect to its Chapter 15 Case (and the attorneys of record from law firms (i) Galdino & Coelho Advogados, (ii) Barbosa, Müssnich, Aragão Advogados, and (iii) Basilio Advogados (together, the "**Brazilian Counsel**") with respect to the Brazilian Proceeding), no other persons are presently authorized to administer foreign proceedings of the Chapter 15 Debtor at this time; and

(e)    The Petitioner is not seeking provisional stay relief under sections 1519 of the Bankruptcy Code against any entity that may otherwise take any action proscribed by section 362 of the Bankruptcy Code against the Light Group within the territorial jurisdiction of the United States.

26

**BASIS FOR RELIEF**

## I. THE PETITIONER HAS SATISFIED THE REQUIREMENTS FOR RECOGNITION OF THE BRAZILIAN PROCEEDING AS A FOREIGN MAIN PROCEEDING

66.     The Court should grant the Recognition Motion and recognize the Brazilian Proceeding as the foreign main proceeding for the Chapter 15 Debtor.  As is set out below, each of the procedural requirements of section 1517(a) of the Bankruptcy Code is satisfied.  Notably, the Court has the jurisdiction to hear and determine this Chapter 15 Case, as the Chapter 15 Debtor has assets in the United States in accordance with section 109(a) of the Bankruptcy Code and is thus eligible to be a debtor under chapter 15 of the Bankruptcy Code.  Additionally, the Petitioner is the duly-authorized "foreign representative" of the Brazilian Proceeding with respect to the Chapter 15 Debtor, and the Brazilian Proceeding satisfies the standard to be considered a "foreign main proceeding" for the purposes of chapter 15 because the center of main interests for the Chapter 15 Debtor is in Brazil.  There is a presumption that the center of main interest of a business entity lies in the location of its registered offices.  Here, the Chapter 15 Debtor's registered offices are located in the city of Rio de Janeiro, Brazil.  Even if that presumption was challenged, the facts regarding the operations of the Chapter 15 Debtor also support a finding that its center of main interests is in Brazil.  A finding that the Chapter 15 Debtor's center of main interests is located in Brazil also aligns with the expectations of the Chapter 15 Debtor's creditors.  *See generally* Ex. B (Existing Notes Offering Memorandum).  Further, as explained below, the Petition meets the requirements of section 1515 of the Bankruptcy Code.

### A. The Court Has Jurisdiction to Recognize the Brazilian Proceeding and Grant the Relief Requested

67.     This Court has jurisdiction to hear and determine this Chapter 15 Case, as the Chapter 15 Debtor has assets in the United States in accordance with section 109(a) of the

Bankruptcy Code and is thus eligible to be a debtor under chapter 15 of the Bankruptcy Code in accordance with section 109(a) of the Bankruptcy Code.  *See Yukos Oil Co.*, 321 B.R. at 407.

68.     The Chapter 15 Debtor's principal assets in the United States are located in this district and, accordingly, venue is also proper here.  28 U.S.C. § 1410(1).  The Chapter 15 Debtor has no employees or operations in the United States and is not a party to any lawsuits in the United States.  *Supra* ¶¶ 18-20, 65.  The Chapter 15 Debtor has no United States affiliates or equity holders.  *Supra* ¶ 18-20.  The Chapter 15 Debtor's principal connection to the United States are the funds deposited in the Texas Escrow Account held with White & Case LLP, the Chapter 15 Debtor's U.S. counsel in connection with the filing of the Chapter 15 Case, which are located in Houston, Texas.  *Supra* ¶ 21.

69.     Accordingly, the Petitioner respectfully submits that (i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(P) and 1334 of title 28 of the United States Code and section 1501 of the Bankruptcy Code as well as the Order of Reference and (ii) venue in this district is consistent with the interests of justice and the convenience of the parties and is proper pursuant to 28 U.S.C. §§ 1410(1), (3).

## B.  The Requirements of Section 1517(a) of the Bankruptcy Code Are Satisfied

70.     Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if each of the following three requirements are met: (1) such foreign proceeding is a "foreign main proceeding" within the meaning of section 1502 of the Bankruptcy Code; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a); *Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B., de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408, 410 (Bankr.

N.D. Tex. 2012), *aff'd*, 701 F.3d 1031 (5th Cir. 2012); *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010).

71.     As explained below, this Petition satisfies all of the requirements of section 1517(a).  Therefore, the Brazilian Proceeding should be recognized as the foreign main proceeding of the Chapter 15 Debtor.

### i.     The Brazilian Proceeding is a "Foreign Proceeding"

72.     The Brazilian Proceeding satisfies the general definition of "foreign proceeding" as set forth in section 101(23) of the Bankruptcy Code.  11 U.S.C. § 101(23).  Section 101(23) requires that a "foreign proceeding" be: (i) either judicial or administrative in character; (ii) collective in nature; (iii) pending in a foreign country and authorized or conducted under a law related to insolvency or the adjustment of debtors; (iv) a proceeding in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (v) for the purpose of reorganizing or liquidating the assets and affairs of the debtor.  *Id.*; *see In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 307 (3d Cir. 2013); *In re Irish Bank Resolution Corp. (In Special Liquidation)*, No. 13-12159 (CSS), 2014 Bankr. LEXIS 1990, at *39-40 (Bankr. D. Del. Apr. 30, 2014); *see also In re PizzaExpress Fin. 2 PLC*, No. 20-34868 (MI) (Bankr. S.D. Tex. Nov. 3, 2020) [ECF No. 35] (recognizing an English proceeding as a foreign main proceeding); *In re Selecta Fin. UK Ltd.*, No. 20-34947 (DRJ) (Bankr. S.D. Tex. Oct. 30, 2020) [ECF No. 61] (same); *In re AllSaints USA Ltd.*, No. 20-33072 (MI) (Bankr. S.D. Tex. July 6, 2020) [ECF No. 54] (recognizing an English company's voluntary arrangement proceeding as foreign main proceeding).  The Bankruptcy Code defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding."  11 U.S.C. § 1502(3).

73.     First, the Brazilian Proceeding is judicial in nature, as Light commenced the case

with the Brazilian Court, which entered the Brazilian Acceptance Order on May 14, 2023, accepting jurisdiction over the Brazilian Proceeding.  Brazilian Counsel Decl. ¶ 54.

74.     Second, the Brazilian Proceeding is "collective," in that it "considers the rights and obligations of all creditors" in a single proceeding.  *See In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 254, 270 (Bankr. S.D.N.Y. 2019) (holding that courts in the Second Circuit have long agreed that a Brazilian RJ process satisfies the standards for a "foreign proceeding," including being a collective proceeding); *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009).  Indeed, its purpose is to create a forum for the orderly administration of Light's debts and assets, giving creditors the ability to file proofs of claims, participate in the plan process, and voice their positions throughout the proceedings, including by filing objections and appeals.  Brazilian Counsel Decl. ¶¶ 19, 36; *see In re Poymanov*, 571 B.R. 24, 33 (Bankr. S.D.N.Y. 2017) ("A proceeding is collective if it considers the rights and obligations of all of a debtor's creditors, rather than a single creditor.").

75.     Third, the Brazilian Proceeding is pending in a foreign country—Brazil—under a law relating to insolvency, the Brazilian Bankruptcy Law.  Brazilian Counsel Decl. ¶¶ 8-9.

76.     Fourth, throughout the Brazilian Proceeding, the assets and affairs of the Chapter 15 Debtor are subject to the control and supervision of the Brazilian Court.  Brazilian Counsel Decl. ¶ 22.  For instance, with the entry of the Brazilian Acceptance Order, the Chapter 15 Debtor is no longer allowed to dispose or encumber its fixed assets without prior authorization from the Brazilian bankruptcy court as provided in the plan of reorganization approved by creditors and the Brazilian bankruptcy court.  *Id*. ¶ 13.  The Brazilian Court's oversight of Light's assets and affairs will continue until such time as Light's reorganization is complete, or up to two (2) years from the confirmation of the applicable plan of reorganization.  *Id*. ¶¶ 37-38.

30

77.     Fifth, Light commenced the Brazilian Proceeding for the purpose of reorganizing the Chapter 15 Debtor. *Id.* ¶¶ 8-9. As set forth in the Brazilian Counsel Declaration, the Brazilian Proceeding is intended to protect the Chapter 15 Debtor so that it may continue to operate its business and negotiate a value-maximizing restructuring plan that will reorganize its capital structure. *Id.* ¶ 22.

78.     U.S. courts have repeatedly held that restructuring proceedings under the Brazilian Bankruptcy Law are "foreign proceedings." *See, e.g.*, *In re Oi S.A.*, No. 23-10193 (JPM) (Bankr. S.D.N.Y. Mar. 29, 2023) [ECF No. 30] (recognizing as foreign main proceeding a case filed pursuant to the in-court reorganization section of the Brazilian Bankruptcy Law); *In re Americanas S.A.,* No. 23-10092 (MEW) (Bankr. S.D.N.Y. Mar. 3, 2023) [ECF No. 32] (same); *In re Mina Tucano Ltda.*, No. 22-11198 (LGB) (Bankr. S.D.N.Y. Oct. 12, 2022) [ECF No. 26] (same); *In re U.S.J. – Açúcar e Álcool S.A., et al.*, No. 22-10320 (DSJ) (Bankr. S.D.N.Y. Apr. 14, 2022) [ECF No. 21] (same); *In re Samarco Mineracao S.A. – Em Recuperação Judicial*, No. 21-10754 (LGB) (Bankr. S.D.N.Y. May 13, 2021) [ECF No. 22] (same); *In re Odebrecht Engenharia e Construção S.A.*, No. 20-12741 (MEW) (Bankr. S.D.N.Y. Dec. 30, 2020) [ECF No. 15] (same).

### ii.     The Petitioner is a Proper "Foreign Representative"

79.     The Petitioner is the "foreign representative" authorized in the Brazilian Proceeding, thereby satisfying sections 101(24) and 1517(a)(2) of the Bankruptcy Code. Section 101(24) of the Bankruptcy Code provides that "the term 'foreign representative' means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24); *see also In re Vitro, S.A.B. de C.V.*, 701 F.3d at 1045. The Bankruptcy Code does not require that the foreign

31

representative be appointed by the foreign court. Instead, a debtor may appoint a foreign

representative pursuant to corporate authorizations passed in accordance with Brazilian law. *See,*

*e.g.*, *In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175, 183 (Bankr. S.D.N.Y. 2022) (holding

that the foreign representative duly authorized by the Brazilian chapter 15 debtors' board was a

foreign representative within 11 U.S.C. §101(24)); *In re Serviços de Petróleo Constellation S.A.*,

600 B.R. at 270 (recognizing as proper foreign representative authorized under resolutions to

commence a chapter 15 case on behalf of each of the Brazilian debtors); *In re Oi Brasil Holdings*

*Coöperatief U.A.*, 578 B.R. 169, 184–85 (Bankr. S.D.N.Y. 2017) (recognizing appointment of

foreign representative "pursuant to resolutions and powers of attorney signed by authorized

representatives of" Brazilian debtors); *In re OAS S.A.*, 533 B.R. 83, 95 (Bankr. S.D.N.Y. 2015)

(recognizing Brazilian insolvency proceeding and holding that the "Bankruptcy Code does not

require the judicial authorization or appointment of the foreign representative"); 1 COLLIER ON

BANKRUPTCY ¶ 13.04[5] ("[W]here the debtor remains in charge of its own affairs, the debtor itself

might be able to appoint its own representative for this purpose, without express court sanction.").

80.     Here, the Petitioner is an individual who has been duly appointed by the Board of

Officers of the Chapter 15 Debtor as its foreign representative in accordance with section 101(24)

of the Bankruptcy Code and has been granted authority to commence this Chapter 15 Case. *See*

Form of Voluntary Petition, Ex. B. As explained in the Brazilian Counsel Declaration, the

Brazilian Bankruptcy Law authorizes the Chapter 15 Debtor's management to continue to

administer the reorganization of their assets and affairs. Brazilian Counsel Decl. ¶ 22.

### iii.     The Petition Was Properly Filed Under Sections 1504 and 1509 and Meets the Requirements of Section 1515 and Bankruptcy Rule 1007(a)(4)

81.     The third and final requirement for recognition of a foreign proceeding under

section 1517(a) of the Bankruptcy Code is that the petition for recognition meet the procedural

requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a)(3).  Here, all of those procedural requirements are satisfied.

82.     First, the Petitioner duly and properly commenced this Chapter 15 Case in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by filing the Petition with all the documents and information required by sections 1515(b) and 1515(c).  *See In re Ran*, 607 F.3d at 1021-22; *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code.").

83.     Second, in accordance with sections 1515(b)(1)-(2) and (d) of the Bankruptcy Code, the Petitioner has submitted evidence of the existence of the Brazilian Proceeding and the appointment of the foreign representative.  *See* Brazilian Counsel Decl. Ex. A (RJ Petition filed in the Brazilian Proceeding); *id.*, Ex. B (Brazilian Acceptance Order); Form of Voluntary Petition, Ex. B (containing copies of the corporate resolutions authorizing the Petitioner to file this Recognition Motion and to act on behalf of the Chapter 15 Debtor in this Chapter 15 Case as its foreign representative).  As such, the Petitioner satisfies sections 101(24) and 1517(a)(2) of the Bankruptcy Code.  *See, e.g.*, *In re Vitro, S.A.B. de C.V.*, 701 F.3d at 1046–47 (holding that an individual appointed as foreign representative by the debtor's board in anticipation of a Mexican *concurso* proceeding, which contemplates "self-management" during the proceeding similar to that of a debtor in possession, fit within the scope of the Bankruptcy Code's definition of "foreign representative," and recognizing the individual as the foreign representative); *see also In re OAS S.A.*, 533 B.R. at 93 (citing *In re Vitro, SAB. de C.V.*, 701 F.3d at 1046).

84.     Third, in accordance with section 1515(c) of the Bankruptcy Code, this Recognition

Motion contains a statement identifying the Brazilian Proceeding and the related English Proceeding as the only foreign proceedings currently pending with respect to the Chapter 15 Debtor. *See supra* ¶ 65.

85.     Fourth, the Foreign Representative has also satisfied the additional requirements set forth in Rule 1007(a)(4) of the Bankruptcy Rules:  (a) including corporate ownership statements containing the information described in Bankruptcy Rule 7007.1 with respect to the Chapter 15 Debtor and (b) filing a list containing the names and addresses of all person or bodies authorized to administer the foreign proceedings of the Chapter 15 Debtor and all parties to litigation pending in the U.S. in which the Chapter 15 Debtor is a party at the time of the filing of the Petitions.  *See supra* ¶ 65.

### C.  The Brazilian Proceeding Satisfies the Requirements for Recognition as a "Foreign Main Proceeding"

86.     With respect to the Chapter 15 Debtor, the Brazilian Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code.  A "foreign main proceeding" is defined in the Bankruptcy Code as a "foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).

87.     The center of main interest ("**COMI**") for the Chapter 15 Debtor is Brazil.  As previously stated, Light is incorporated in Brazil and, at all times since its incorporation, has maintained its registered offices and employees in Brazil.  *See supra* ¶¶ 18-20.  While the Bankruptcy Code does not define COMI, section 1516(c) provides that, in the absence of evidence to the contrary, a debtor's registered offices or habitual residence "is presumed to be the center of the debtor's main interests."  11 U.S.C. § 1516(c).  The legislative history indicates that this rebuttable presumption was "designed to make recognition as simple and expedient as possible" in cases where the "COMI" of a debtor is not controversial.  H. Rep. No. 109-31, pt. 1, at 112-13

(2005).  The Chapter 15 Debtor is operationally and functionally centered in the State of Rio de Janeiro in Brazil, organized under a centralized and interconnected senior management and, is subject to combined cash management and accounting functions in the State of Rio de Janeiro.

88.     Here, the presumption that the Chapter 15 Debtor's COMI is Brazil is correct.  In assessing whether the registered office statutory presumption withstands scrutiny, courts have developed a list of non-exclusive factors for determining a debtor's COMI.  *See In re Ran*, 607 F.3d at 1023-24 (citing the *SPhinX* factors); *In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) (citation omitted); *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137-38 (2d Cir. 2013) (referring to the COMI factors developed by the court in *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).  Those factors include: (i) the location of the debtor's headquarters; (ii) the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); (iii) the location of the debtor's primary assets; (iv) the location of the majority of the debtor's creditors or a majority of the creditors who would be affected by the case; and (v) the jurisdiction whose law would apply to most disputes.  *See In re Fairfield Sentry Ltd.*, 714 F.3d at 137; *In re Stanford Int'l Bank, Ltd.*, No. 3:09-CV-0721-N, 2012 WL 13093940, at *18 (N.D. Tex. July 30, 2012) (enumerating the *SPhinX* factors).

89.     All of the main business decisions with respect to the Chapter 15 Debtor are made in Brazil, further supporting a finding that the Chapter 15 Debtor's COMI is Brazil.  Indeed, the Chapter 15 Debtor has the following connections to Brazil:

(a)     the Chapter 15 Debtor's operations are managed and directed from Light's office in the State of Rio de Janeiro and are carried out in the State of Rio de Janeiro;

(b)     corporate governance for the Chapter 15 Debtor is directed from the State of Rio de Janeiro;

(c)     in-person meetings of the managers and shareholders of the Chapter 15 Debtor are held in the State of Rio de Janeiro;

(d)     all of the members of the Chapter 15 Debtor's board maintain their offices in the State of Rio de Janeiro;

(e)     the Chapter 15 Debtor's statutory books, records, and corporate documents are kept in Brazil, have been public, and are therefore ascertainable by creditors and third parties;

(f)     strategic and key operating decisions and key policy decisions for the Chapter 15 Debtor are made by management located in the State of Rio de Janeiro;

(g)     the Chapter 15 Debtor's corporate accounting, accounts payable, insurance procurement, accounts receivable, financial planning, internal auditing, marketing, treasury, real estate, research and development, and tax services are provided in the State of Rio de Janeiro;

(h)     the Chapter 15 Debtor's finance, legal, human resources, payroll, billing, freight management, procurement and engineering services are carried out in the State of Rio de Janeiro;

(i)     key information technology and systems used by the Chapter 15 Debtor are provided from the State of Rio de Janeiro;

(j)     the Chapter 15 Debtor's cash management functions are maintained and directed from the State of Rio de Janeiro;

(k)     management and senior staff of the Chapter 15 Debtor regularly attend meetings in the State of Rio de Janeiro;

(l)     the Chapter 15 Debtor's assets are located in Brazil;

(m)     capital expenditure decisions affecting the Chapter 15 Debtor are managed in the State of Rio de Janeiro; and

(n)     the majority of the Chapter 15 Debtor's creditors, both in number and amount, are located in Brazil.

90.     Courts have also emphasized the need for the debtor's COMI to be readily ascertainable by third parties. *See In re Ran*, 607 F.3d at 1025 ("[I]t is important that the debtor's COMI be ascertainable by third parties."); *In re British Am. Ins. Co. Ltd*., 425 B.R. 884, 912 (Bankr. S.D. Fla. 2010) ("[t]he location of a debtor's COMI should be readily ascertainable by third parties"); *see also In re Grand Prix Assocs*., No. 09-16545 (DHS), 2009 Bankr. LEXIS 1239, at *20 (Bankr. D.N.J. May 18, 2009) (the Guide to Enactment of the UNCITRAL Model Law on

36

Cross-Border Insolvency explained that the COMI was modeled after the European Union Convention on Insolvency Proceedings, which states: "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties") (citations omitted).

91.     Some courts look to the expectations of creditors, which can be "evaluated through examination of the public documents and information available to guide creditor understanding of the nature and risks of their investments." *In re Serviços de Petróleo Constellation S.A.*, 613 B.R. 497, 508 (Bankr. S.D.N.Y. 2020) (citing *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. at 228); *In re OAS S.A.*, 533 B.R. at 101-03 (reviewing offering memorandum to establish noteholder expectations as part of a COMI analysis); *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 474 B.R. 88, 93-94 (Bankr. S.D.N.Y. 2012) (same); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 418 (Bankr. S.D.N.Y. 2014) (considering terms of indenture to establish creditor expectations regarding likely location of a restructuring as part of a COMI analysis).

92.     The fact that the holders of the Existing Notes expect that the value of those Existing Notes derives from Light's business in Brazil further supports a finding that the Chapter 15 Debtor's COMI is Brazil.  The offering memorandum of the Existing Notes provides that the main responsible party for generating income to satisfy the Existing Notes is the Brazilian parent, Light, which conducts most of its business in Brazil.  *See* Ex. B (Offering Memorandum) at 22-46.  The risk factors in the offering memorandum highlight that the Existing Notes are heavily influenced by the Brazilian economy, such that the Existing Noteholders are aware that their investment directly relies on the parent entity's business operation in Brazil.  *Id.*

93.     Accordingly, the COMI for the Chapter 15 Debtor is in Brazil, and therefore, the Brazilian Proceeding is, and should be recognized as, the foreign main proceeding of the Chapter

15 Debtor, pursuant to section 1517(b)(1) of the Bankruptcy Code.

*        *        *

94.     For all of the reasons set forth above, the Petitioner respectfully submits that all of the requirements of section 1517(a) have been satisfied and that the Chapter 15 Debtors are entitled to all of the relief provided by section 1520 of the Bankruptcy Code.  Thus, the Court should enter the Proposed Order attached hereto recognizing the Brazilian Proceeding as foreign main proceeding.

## II.   DISCRETIONARY RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE IS WARRANTED AND APPROPRIATE

95.     In addition to the relief automatically provided under section 1520 of the Bankruptcy Code upon recognition of the Brazilian Proceeding, the Petitioner requests that this Court provide additional relief and assistance pursuant to sections 105(a), 1145(a), 1507(a) and 1521(a) of the Bankruptcy Code to further the goal of orderly administration of the Chapter 15 Debtor's assets.

### A.   The Court Should Exercise Its Discretion Under Section 105(a), 1507 and 1521 of the Bankruptcy Code to Grant the Relief Requested

96.     The Bankruptcy Code provides this Court with the discretion to recognize and enforce the Brazilian RJ Plan and Brazilian Confirmation Order in the United States because granting such relief would further the statutory objectives of chapter 15.  *See* 11 U.S.C. § 1521(a). Enforcement of these documents is also a necessary and appropriate exercise of comity.  Section 1501(a) provides, in relevant part, that:

> [t]he purpose of [chapter 15] is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of (1) cooperation between . . . (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases . . . (3) fair and efficient administration of cross-border

38

> insolvencies that protects the interests of all creditors, and other interested entities, including the debtor . . . (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

97.     The Brazilian RJ Plan was approved by creditors representing 99.1% in amount and 99.4% of the total headcount present at the meeting, including 51% of international bondholders, at a duly convened GCM.  *Supra* ¶ 44.  The Brazilian RJ Plan will significantly de-leverage the Chapter 15 Debtor's capital structure and provide them with much-needed new money financing through the New Money Capital Raise.  *Supra* ¶¶ 46-53.  The Chapter 15 Debtor now require this Court's support to consummate the transactions contemplated in the Brazilian RJ Plan.  Specifically, the Chapter 15 Debtor will not be able to issue the Exempt Securities absent an order from this Court exempting them from the U.S. Registration Requirements.  *Infra* ¶ 119.  In addition, the Chapter 15 Debtors cannot effectively restructure the Existing Notes absent authority from this Court, the Existing Notes will only be cancelled after the distributions elected by the Existing Noteholders are made, including the issuance and delivery of the Exempt Securities, as applicable.  The Requested Relief is well within the scope of the statutory objectives of chapter 15 of the Bankruptcy Code.  11 U.S.C. § 1501(a).  Companies, such as the Chapter 15 Debtor, who have accessed the international and U.S. capital markets and issued debt governed by U.S. law but are undergoing restructuring proceedings outside the United States require assistance from U.S. courts to fully consummate their restructurings and "facilitat[e] . . . the rescue of financially troubled businesses…"  11 U.S.C. § 1501(a)(5).  The Brazilian RJ Proceeding provided for extensive procedural protections for creditors and assured a due court-supervised restructuring in Brazil.  Brazilian Counsel Decl. ¶ 67.  This Court should, accordingly, exercise its discretion to give full force and effect to the Brazilian RJ Plan and the Brazilian Confirmation Order, consistent with the Bankruptcy Code and principles of comity.  As set forth below, the Chapter 15 Debtor

meets the criteria for granting such relief.[18]

### i. Enforcement of the Brazilian RJ Plan and the Brazilian Confirmation Order Within the Territorial Jurisdiction of the United States is Necessary and Appropriate

98.     Section 1521(a) of the Bankruptcy Code authorizes the Court to grant certain enumerated forms of relief as well as "any appropriate relief" necessary to effectuate the purposes of chapter 15 and to protect a debtor's assets and the interests of creditors.  11 U.S.C. § 1521(a). Section 1507 of the Bankruptcy Code also authorizes the Court to grant discretionary relief to provide "additional assistance" to a foreign representative beyond that permitted under section 1521.  *See* 11 U.S.C. § 1507(a).  Additionally, section 105(a) provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

99.     Although "[t]he interplay between the relief available under sections 1507 and 1521 is far from clear," courts have held that "appropriate relief under section 1521 or additional assistance under section 1507 may include recognizing and enforcing a foreign plan confirmation order" in the exercise of comity.  *In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 615-16 (Bankr. S.D.N.Y. 2018) (citing *In re Atlas Shipping A/S*, 404 B.R. 726, 741 (Bankr. S.D.N.Y. 2009) and *In re U.S. Steel Can. Inc.*, 571 B.R. 600, 608-09 (Bankr. S.D.N.Y. 2017)).  Courts undertake similar inquiries when considering granting relief under both sections.

100.     The Fifth Circuit set forth a three-part analysis to aid courts in assessing which

---

[18]     The Requested Relief is substantially similar to relief that has been granted by courts in other cases.  *In re Oi S.A.*, No. 23-10193 (JPM) (Bankr. S.D.N.Y. June 17, 2024) [ECF No. 42]; *In re Serviços de Petróleo Constellation S.A.*, No. 18-13952 (MG) (Bankr. S.D.N.Y. Jan. 14, 2020), Hr'g Tr. at 105:16-19 [ECF No. 196] (it "is clearly well-established in U.S. law under Chapter 15 . . . that sections 1507 and 1521 provide this court with authority to recognize and enforce a Brazilian RJ [p]lan."); *In re Aralco S.A. – Indústria e Comércio*, No. 15-10419 (LGB) (Bankr. S.D.N.Y. Feb. 22, 2022) [ECF No. 37]; *In re U.S.J. - Açúcar e Álcool S.A.*, No. 22-10320 (DSJ) (Bankr. S.D.N.Y. Apr. 14, 2022) [ECF No. 21].

provision to use in granting relief in chapter 15 cases.  See *In re Vitro S.A.B. de C.V.*, 701 F.3d at

1054.  Under this approach, courts first consider the relief specified in sections 1521(a) and (b),

and, if the relief requested is not provided there, consider whether the relief falls more generally

under section 1521's grant of "any appropriate relief."  *Id.*  "Appropriate relief" is "relief

previously available under Chapter 15's predecessor, [section] 304."  *Id.*; *Atlas Shipping A/S*, 404

B.R. at 741 n.11; *In re Oi S.A.*, 587 B.R. 253, 265 (Bankr. S.D.N.Y. 2018).  Finally, "[o]nly if a

court determines that the relief requested was not formerly available under [section] 304 should a

court consider whether relief would be appropriate as 'additional assistance' under [section] 1507."

*In re Vitro S.A.B. de C.V.*, 701 F.3d at 1054.

101.    Relief under section 1521 can only be granted if the interests of "the creditors and

other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).

"Sufficient protection" generally "embod[ies] three basic principles":

> the just treatment of all holders of claims against the bankruptcy
> estate, the protection of U.S. claimants against prejudice and
> inconvenience in the processing of claims in the [foreign]
> proceeding, and the distribution of proceeds of the [foreign] estate
> substantially in accordance with the order prescribed by U.S. law.

*In re Olinda Star Ltd.*, 614 B.R. 28, 46 (Bankr. S.D.N.Y. 2020) (quoting *In re Atlas Shipping A/S*,

404 B.R. at 740 (citing *In re Artimm, S.r.L.*, 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005))); *see also*

*In re Vitro, S.A.B. de C.V.*, 473 B.R. 117, 121 (Bankr. N.D. Tex. 2012).  Moreover, "[a]

determination of sufficient protection requires a balancing of the respective parties' interests."  *In*

*re ENNIA Caribe Holding N.V.*, 596 B.R. 316, 322 (Bankr. S.D.N.Y. 2019) (citations omitted).

When applying the "sufficient protection" standard set forth in section 1522 for matters of

discretionary relief, the court must ensure that the relief is narrowly tailored so that it does not

unduly favor the foreign representative over the other parties.  *See In re Comair Ltd.*, No. 21-1029

(JLG), 2021 WL 5312988, at \*12 (Bankr. S.D.N.Y. Nov. 14, 2021); *see also In re Markus*, 610 B.R. 64, 77 (Bankr. S.D.N.Y. 2019) (explaining that Section 1522 seeks to balance relief granted to the foreign representative with the interests of the party affected by the relief) (citing *In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 626 (Bankr. S.D.N.Y. 2010)).

102.    First, when evaluating whether relief requested under section 1521(a) affords creditors sufficient protection, courts have explained that just treatment "is generally satisfied upon a showing that the applicable law provides for a comprehensive procedure for the orderly and equitable distribution of [a] [debtor]'s assets among all of its creditors." *Avanti Commc'ns*, 582 B.R. at 616 (internal citations omitted).  Foreign proceedings do not satisfy the "just treatment" factor "where the proceeding fails to provide creditors access to information and an opportunity to be heard in a meaningful manner, which are [f]undamental requisites of due process, or where the proceeding would not recognize a creditor as a claimholder." *Id.*  Courts found that creditors were sufficiently protected when they "had a full and fair opportunity to vote on, and be heard in connection with, the [plan]." *In re Olinda*, 614 B.R. at 47.

103.    Extensive procedural protections in Brazil have assured that the Brazilian Proceeding was orderly, fair and duly supervised by the Brazilian Court.  Brazilian Counsel Decl. ¶ 67.  Throughout the duration of the Brazilian Proceeding, all creditors were given an opportunity to object, negotiate, and otherwise participate fully in the restructuring process.  *Supra* ¶¶ 39-44; Brazilian Counsel Decl. ¶ 67.  All creditors were provided with appropriate notice of the Brazilian Proceeding, including when the Chapter 15 Debtor filed their Brazilian RJ Plan and when the Brazilian Court scheduled the GCM to vote on the Brazilian RJ Plan.  *Supra* ¶ 40; Brazilian Counsel Decl. ¶¶ 20, 37, 70.  The Public Prosecutor and the Judicial Administrators also diligently represented the interests of all creditors throughout the Brazilian Proceeding and have opined in

favor of confirmation of the Brazilian RJ Plan. *Supra* ¶¶ 40, 44; Brazilian Counsel Decl. ¶¶ 63, 66. Ultimately, creditors representing 99.1% in amount and 99.4% of the total headcount present at the meeting, including 51% of international bondholders, voted in favor of the Brazilian RJ Plan. *Supra* ¶ 44; Brazilian Counsel Decl. ¶ 61.

104.    Second, courts further consider "the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding." *Atlas Shipping*, 404 B.R. at 740. The Brazilian RJ Plan provides that creditors such as the Existing Noteholders, shall be entitled to choose between different available payment options. *Supra* ¶¶ 47-53; Brazilian Counsel Decl. ¶¶ 68-75. The Chapter 15 Debtor will launch the Election Solicitation through the DTC to facilitate making such elections and consolidate individual Existing Noteholders' payment choices. *Supra* ¶ 58.

105.    The third element of sufficient protection is "distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law." *Atlas Shipping*, 404 B.R. at 740. Creditors and other interested entities may be sufficiently protected when the foreign court shares a "similar sensitivity to issues of due process and just treatment of creditors" with the U.S. bankruptcy court when considering reorganization plans. *In re Olinda*, 614 B.R. at 47.

106.    Here, the Brazilian RJ Plan contemplates that creditors will recover from the Chapter 15 Debtor's estates in accordance with the classification of their claims pursuant to the Brazilian Bankruptcy Law, Brazilian Counsel Decl. ¶¶ 31-32, 48-50, which is consistent with the order of priority set forth in the Bankruptcy Code. The Chapter 15 Debtor does not have any secured creditors or creditors with labor or small-business claims. *See supra* ¶¶ 22-23. Holders of unsecured claims will recover from the estates ratably, in accordance with the elections such

holders make with respect to their distributions.  *Supra ¶¶* 47-53; Brazilian Counsel Decl. ¶¶ 69-75.

107.     Finally, the balance of interests weighs in favor of granting the Requested Relief. Entry of the Proposed Order will enable the Chapter 15 Debtor to effectively restructure its Existing Notes.  The relief sought herein is in accordance with the Brazilian RJ Plan, Brazilian RSA, and Noteholder RSA, which authorize the Chapter 15 Debtor to seek that this Court grant the Brazilian RJ Plan and Brazilian Confirmation Order full force and effect in the U.S. and make them binding upon any and all prepetition creditors residing, domiciled, or based in the United States, as well as authorize the issuance of the Exempt Securities.  Failure by the Chapter 15 Debtors to implement any portion of the Brazilian RJ Plan jeopardizes the global restructuring of the Chapter 15 Debtors to the detriment of all stakeholders.  In these circumstances, the balance of interests weighs heavily in favor of granting the Requested Relief in the Motion.

108.     As with section 1521(a), in exercising discretion to grant relief under section 1507(a), courts should determine whether such additional assistance will, consistent with the principles of comity, reasonably assure that: (i) treatment of all holders of claims against or interests in the foreign debtor's property is just; (ii) claimholders in the United States are protected against prejudice and inconvenience in the processing of claims in the foreign proceeding; (iii) no preferential or fraudulent dispositions of the foreign debtors' property will occur or have occurred; and (iv) the distribution of proceeds of the foreign debtor's property will occur substantially in accordance with the order prescribed by the Bankruptcy Code.  11 U.S.C. § 1507(b).  The principle of comity appears in section 1507's introductory language, rather than as one of the enumerated factors, to emphasize its importance.  *In re Vitro S.A.B. de CV*, 701 F.3d at 1064; *In re Atlas Shipping A/S*, 404 B.R. at 740-41.

44

109.     Because granting relief under section 1507 is more extraordinary than under section 1521, the test for granting relief under section 1507 is more rigorous.  *See In re Vitro, S.A.B. de C.V.*, 701 F.3d at 1056-57 (internal citations omitted).  The first two factors are identical to those considered in the section 1521(a) analysis detailed in paragraphs 102-104 above.   Section 1507(b)(3) requires that any additional assistance requested prevent preferential or fraudulent transfers, which may be satisfied if the foreign reorganization proceeding allows for interested parties to bring avoidance actions against third parties intending to harm creditors or damage the debtor's estate.  *In re Oi S.A.*, 587 B.R. at 268.  The Brazilian Proceeding includes protections to prevent preferential or fraudulent dispositions of the Chapter 15 Debtor's property.   Brazilian Counsel Decl. ¶¶ 46-47.  Accordingly, to the extent such relief is not contemplated under section 1521(a), this Court should, for the reasons detailed above, grant the Requested Relief to provide the Foreign Representative with "additional assistance" in implementing the transactions in the Brazilian RJ Plan.  11 U.S.C. § 1507(b).

> ### ii.      *Enforcing Particular Elements of the Brazilian RJ Plan Is Necessary and Appropriate*

110.     In connection with requesting that this Court grant full force and effect to the Brazilian RJ Plan, the Chapter 15 Debtor seeks certain particular relief, the necessity and appropriateness of which are set forth in further detail below.

### a.      *Permanent Injunctive Relief*

111.     U.S. bankruptcy courts have granted permanent injunctions in numerous chapter 15 cases to support the implementation of a Brazilian reorganization plan and confirmation order.  *See, e.g.*, *In re Oi S.A.*, No. 23-10193 (JPM) (Bankr. S.D.N.Y. June 17, 2024) [ECF No. 42]; *In re Serviços de Petróleo Constellation S.A*., No. 18-13952 (MG) (Bankr. S.D.N.Y. May 3, 2022) [ECF

No. 288]; *In re U.S.J. - Açúcar e Álcool S.A.*, No. 22-10320 (DSJ) (Bankr. S.D.N.Y. Apr. 14, 2022) [ECF No. 21]; *In re Aralco S.A. – Indústria e Comércio*, No. 15-10419 (LGB) (Bankr. S.D.N.Y. Feb. 22, 2022) [ECF No. 37]; *In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 15, 2018) [ECF No. 277]; *In re Rede Energia S.A.*, No. 14-10078 (SCC) (Bankr. S.D.N.Y. Sept. 9, 2014) [ECF No. 36].

112.    Pursuant to section 1521(e), the federal standard for injunctive relief, which requires a party to show that it is likely to suffer irreparable harm in the absence of an injunction, applies in chapter 15 cases.  *See* 11 U.S.C. § 1521(e); *see also In re Olinda Star Ltd.*, 614 B.R. 28, 47-48 (Bankr. S.D.N.Y. 2020); *MF Glob. Holdings Ltd. v. Allied World Assurance Co. (In re MF Glob. Holdings Ltd.)*, 562 B.R. 55, 64 (Bankr. S.D.N.Y. 2017).

113.    Irreparable harm exists where the orderly determination of claims against a debtor and the fair distribution of a debtor's assets are disrupted.  *See, e.g.*, *In re Schimmelpenninck*, 183 F.3d 347, 358, 360 (5th Cir. 1999) (finding that one creditor's ability to upset the fair and orderly distribution of the bankruptcy estate's assets justified granting an injunction); *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985) ("Unless all parties in interest, wherever they reside, can be bound by the arrangement which it is sought to have legalized, the scheme may fail.") (quoting *Can. S. Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883)); *In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("As a rule . . . irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors.").  Courts have held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury."  *In re Rubin*, 160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) (quoting *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988)).

114.     Absent the permanent injunctions requested in the Proposed Order,[19] creditors may take action against the Chapter 15 Debtor or against its U.S.-based property in an attempt to contravene the terms of the Brazilian RJ Plan.  Permitting creditors to evade the terms of the Brazilian RJ Plan and the Brazilian Confirmation Order would result in larger defense costs for the Chapter 15 Debtor as it will be forced to defend against these suits, regardless of their merit. This will have the effect of depleting the Chapter 15 Debtor's resources, thereby reducing their reorganized value.   By contrast, granting the requested injunctive relief would support implementation of the Brazilian RJ Plan and the Brazilian Confirmation Order and would protect the interests of all creditors in having their claims valued and paid as determined by the Brazilian Court.

115.     In addition, the injunctive relief sought herein would not cause undue hardship or prejudice to the rights of any U.S.-based creditors.  In fact, the Brazilian RJ Plan and voting procedures apply uniformly to all of the Chapter 15 Debtor's creditors wherever they reside, including the Existing Noteholders, who were provided with the opportunity to participate in the plan of reorganization discussions and submit their individual votes in accordance with the

---

[19]   The requested injunction relief is as follows: "All entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than the Petitioner and his expressly authorized representatives and agents, are hereby enjoined from: (a) executing against any of the Chapter 15 Debtor's assets; (b) the commencement or continuation of a judicial, administrative, arbitral, or other action or proceeding, or attempt to recover a claim, which in either case in any way relates to, or would interfere with or impede, the administration of the Chapter 15 Debtor's estate in the Brazilian Proceeding, or the solicitation, implementation, or consummations of the Brazilian RJ Plan, the Brazilian Confirmation Order, or the terms of this Order, including without limitation any and all unpaid judgments, settlements, notes, or otherwise against the Chapter 15 Debtor in the United States; (c) taking or continuing any act to create, perfect, or enforce a lien or other security interest, set-off, or other claims against the Chapter 15 Debtor or any of their property; (d) transferring, relinquishing, or disposing of any property of the Chapter 15 Debtor to an entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Petitioner; or (e) commencing or continuing an individual action or proceeding concerning the Chapter 15 Debtor's assets, rights, obligations, or liabilities to the extent they have not been stayed pursuant to sections 1520(a) and 362 of the Bankruptcy Code; *provided*, in each case, that such injunction shall be effective solely within the territorial jurisdiction of the United States and solely with respect to prepetition claims; *provided*, *further*, that all rights under the Brazilian RJ Plan shall be preserved."  Proposed Order ¶ 11.

Brazilian Bankruptcy Law. Brazilian Counsel Decl. ¶ 44. For example, U.S.-based Existing Noteholders appeared, directly or through the Indenture Trustee, at the Brazilian Proceeding and participated fully and fairly in the Brazilian RJ Plan's approval process. Moreover, the Chapter 15 Debtor understands that BNY, as the Indenture Trustee, scrupulously disseminated notice to the beneficial holders of the Existing Notes on numerous occasions regarding various developments in the Brazilian Proceeding, including on the occurrence of the GCM for approval of the Brazilian RJ Plan.

116.    In short, due process has been and continues to be preserved for all stakeholders in connection with the Brazilian Proceeding, and the injunctive relief sought herein does nothing more than give effect to the Brazilian Confirmation Order and the Brazilian RJ Plan in the territorial limits of the U.S. *Id.*

### b.    *Directions and Authorizations*

117.    The Foreign Representative also seeks that DTC (*i.e.*, the record holder of the global note representing all of the Existing Notes) and the Indenture Trustee (together with DTC, the "**Directed Parties**") be authorized and directed to carry out all actions required of them pursuant to the Brazilian RJ Plan and Brazilian Confirmation Order or that are necessary to consummate the terms of the Brazilian RJ Plan and Brazilian Confirmation Order.

118.    Without an order from a U.S. court, the Directed Parties may resist taking such actions. The Proposed Order will give clear direction and authority under U.S. law to these parties to carry out the provisions of the Brazilian RJ Plan and ensure its efficient implementation. Courts have granted similar requests for direction in several chapter 15 cases.[20]

---

[20]    *In re Olinda Star Ltd.*, 614 B.R. at 48 (directing certain directed parties, including JPLs, indenture trustee, and DTC, to take required action under the original BVI scheme); *In re Serviços de Petróleo Constellation S.A., et al.*, No. 18-13952 (MG) (Bankr. S.D.N.Y. May 3, 2022) [ECF No. 288] ¶ 9 (directing certain directed parties,

**B. The Court Should Exercise Its Authority and Discretion Under Section 105, 1145, 1507, and 1521 to Exempt the Chapter 15 Debtor from the U.S. Registration Requirements**

> **i.   Sections 105, 1145, 1521 and 1507 Authorize the Court to Apply Section 1145 in this Chapter 15 Case**

119.    The Foreign Representative requests exemption from the U.S. Registration Requirements for the offer and sale of Exempt Securities including to the extent a vote on the Brazilian RJ Plan and election made pursuant to the Brazilian RJ Plan is considered an offer and sale of such securities.  With respect to the vote on the Brazilian RJ Plan and election made pursuant to the Brazilian RJ Plan, the Chapter 15 Debtor seeks the Requested Relief out of an abundance of caution merely to ensure that the Chapter 15 Debtor's solicitation of votes on the Brazilian RJ Plan and solicitation of election of recovery options under the Brazilian RJ Plan, in compliance with the Brazilian Bankruptcy Law, are exempt from U.S. registration procedures that are unduly burdensome and unnecessary under the present circumstances.

120.    Chapter 15 does not contain specific provisions dealing with the interplay of foreign insolvency processes and U.S. securities laws.  It does, however, provide the Court with an effective mechanisms for such coordination through domestic remedies and relief.  In particular, section 1521(a)(7) allows the Court to import any relief available to a trustee in chapter 11 into a

---

including DTC and indenture trustee, and authorizing certain authorized parties to take actions to give effect to and implement, in alia, the RJ plan amendment); *In re U.S.J. - Açúcar e Álcool S.A.*, No. 22-10320 (DSJ) (Bankr. S.D.N.Y. Apr. 14, 2022) [ECF No. 21] (directing certain directed parties, including indentured trustees and DTC, to take actions to give effect to and implement the restructuring transactions approved by the Brazilian RJ plan and to facilitate distributions of the notes pursuant to the plan*); In re Oi S.A.*, 587 B.R. at 266-67 (granting relief requested and observing that "the requests for instructions directing the [i]ndenture [t]rustee to take certain actions with respect to securities in accordance with the terms of the Brazilian RJ Plan is also relief of a type available under U.S. law"); *In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 657 (Bankr. S.D.N.Y. 2016) (granting order directing DTC and indenture trustee to carry out the ministerial actions necessary to consummate the foreign order); *In re Lupatech S.A.*, No. 16-11078 (MG) (Bankr. S.D.N.Y. 2016) [ECF Nos. 38 & 44] (same).

chapter 15 case, with limited exceptions,[21] where necessary to effectuate the purposes of chapter 15 and protect the assets of a debtor and the interests of its creditors.  11 U.S.C. § 1521(a)(7).  "Congress explained . . . that the bankruptcy court was being given broad latitude [under chapter 15] to mold relief to meet specific circumstances" and therefore a bankruptcy court's discretion to grant relief under section 1521(a) is "exceedingly broad."  *In re Vitro S.A.B. de CV*, 701 F.3d at 1053 ("Chapter 15 provides courts with broad, flexible rules to fashion relief appropriate for effectuating its objectives in accordance with comity."); *In re Atlas Shipping A/S*, 404 B.R. at 739.

121.    Numerous courts have held that the application of section 1145 to securities offered under a foreign restructuring plan is appropriate in a chapter 15 case under sections 1521 and 1507 of the Bankruptcy Code.  *See In re Oi S.A.*, No. 23-10193 (JPM) (Bankr. S.D.N.Y. June 17, 2024) [ECF No. 42] ¶ 12 (exempting, pursuant to sections 105(a), 1145, and 1521(a)(7) of the Bankruptcy Code, from registration any offer and sale (or deemed offer and sale) of new notes and other securities issued pursuant to a Brazilian RJ plan); *In re Serviços de Petróleo Constellation S.A., et al.*, No. 18-13952 (MG) (Bankr. S.D.N.Y. May 3, 2022) [ECF No. 288] (exempting, pursuant to sections 105, 1145, 1507(a) and 1521(a)(7) of the Bankruptcy Code, from registration any offer and sale (or deemed offer and sale) of new notes, warrants, and other securities issued pursuant to a Brazilian RJ plan); *In re Enjoy S.A.*, No. 20-11411 (MG) (Bankr. S.D.N.Y. Aug. 25, 2020) [ECF No. 36] ¶ 3 (exempting, under sections 1521(a)(7) and 1145 of the Bankruptcy Code, the offer and sale (or deemed offer and sale) and resale of bonds); *In re CGG S.A.*, 579 B.R. 716, 721 (Bankr. S.D.N.Y. 2017) (holding that securities issued pursuant to a French plan to certain

---

[21]    Because relief under section 1145 is available in chapter 11 and is not explicitly excluded under section 1521(a)(7), section 1145 is available to a foreign representative under section 1521(a)(7).

bondholders of the foreign debtor were exempt from registration under section 1145(a)(1) (internal citations omitted); *In re Abengoa, S.A.,* No. 16-10754 (KJC), 2016 Bankr. LEXIS 4678, at *12-13 (Bankr. D. Del. Dec. 8, 2016) (ruling that the securities issued by the foreign debtor were exempt from registration under section 1145 "[b]y virtue of 11 U.S.C. § 1521 and in the alternative 11 U.S.C. § 1507").

ii.     *The Exempt Securities Satisfy the Requirements to Qualify for a Registration Exemption Under Section 1145*

122.     Section 1145 expressly exempts transactions involving securities issued under a chapter 11 plan (including notes offered or sold by the debtor, a successor of debtor, or "an affiliate [of the debtor] participating in a joint plan with the debtor") from the U.S. registration requirements. 11 U.S.C. § 1145(a)(1)-(2). "Section 1145 'shield[s] from liability under the federal securities laws those individuals participating in the reorganization of an entity in bankruptcy' for the purpose of 'encourag[ing] satisfaction of debts or other existing interests in the debtor.'" *See In re CGG S.A.,* 579 B.R. at 721 (citation omitted). Section 1145(a)(1) provides an exemption from the U.S. Registration Requirements for transactions involving securities that are:

1)   offered or sold "under a plan";

2)   "of the debtor, of an affiliate participating in a joint plan with the debtor or of a successor to the debtor under the plan"; and

3)   "in exchange for a claim against, an interest in, or a claim for an administrative expense in the case concerning, the debtor or such affiliate . . . "

11 U.S.C. § 1145(a)(1).

123.     Here, each of the Exempt Securities (i) is offered and will be issued pursuant to the confirmed Brazilian RJ Plan and (ii) will be issued by Light SESA and Light Energia, and with respect to the Exempt Securities issued by Light SESA, guaranteed by Light, and (iii) offered in exchange for the Existing Notes, as applicable, pursuant to the payment options made by each of

51

the Existing Noteholders.  Brazilian Counsel Decl. ¶ 71.

### iii. The Requested 1145 Exemption Relief Will Ensure Consummation of the Brazilian RJ Plan, and Promote the Purposes of Chapter 15 and Principles of Comity

124.    From a policy perspective, section 1145 represents a congressional compromise between the need to regulate the offer and sale of securities to parties and the need to promote the rehabilitation of troubled businesses.[22]  That same policy "is equally, *if not more*, appropriate in the cross-border reorganization context where adequate disclosure exists and strict enforcement of the U.S. Registration Requirements of the U.S. securities laws would burden (or worse, preclude) the foreign reorganization process."  Kurt A. Mayr, *Using Chapter 15 to Overcome U.S. Securities Law Impediments to Effective Ancillary Relief in Cross-Border Reorganizations*, 15 NORTON J. BANKR. L. & PRAC. 367, 374 (2006) (emphasis added).  Indeed, if section 1145 were unavailable in a chapter 15 case, then a foreign debtor would be "*force[d] . . . to file Chapter 11 cases solely to qualify for the § 1145 exemption*," a result that "would undermine the fundamental purpose of ancillary relief – to provide foreign insolvency proceedings effective relief in the United States without forcing foreign enterprises to undertake the burden of commencing a plenary Chapter 11 case."  *Id.* at 375 (citing *In re Bd. of Dirs. of Multicanal S.A.*, 307 B.R. 384, 392 (Bankr. S.D.N.Y. 2004)) (emphasis added).

125.    The Foreign Representative respectfully submits that requiring the Exempt Securities to comply with U.S. Registration Requirements would be unnecessary and unduly burdensome, and would threaten the effective consummation of the Brazilian RJ Plan.  Given the

---

[22]    In enacting section 1145, Congress determined that a "bankruptcy exemption" was "necessary because the rigidity of the securities laws conflicts with the need for flexibility in [a] bankruptcy case."  *See* H.R. Rep. No. 95-595, at 237 (1977) (emphasis added).  In other words, Congress recognized that a judicial restructuring would be of little use to debtors if they were forced to comply with the registration and prospectus delivery requirements of the Securities Act.  *See In re Amarex Inc.*, 53 B.R. 12, 14 (Bankr. W.D. Okla. 1985).

nature of the Brazilian Proceeding, which allows modifications to the RJ plan up to and during the GCM when the RJ plan is put to a vote, it is not possible to have notes or other securities registered prior to the RJ plan approval.  As an initial matter, the Brazilian Bankruptcy Law requires that all creditors whose claims are impaired under the Brazilian RJ Plan be permitted to vote and provides no exemption for unqualified creditors (*i.e.*, those creditors that would not fall under an SEC exemption).  Brazilian Counsel Decl. ¶¶ 31-32.  After filing a petition for relief and following the Brazilian court's decision to permit a reorganization to proceed, a debtor must submit a plan of reorganization within sixty (60) days of publication of such decision, and such 60-day period cannot be extended.  Brazilian Counsel Decl. ¶ 24.  The process allows for debtors to modify a plan of reorganization several times throughout the process, including prior to the GCM (Brazilian Counsel Decl. ¶ 28), as was the case in the Brazilian Proceeding.  Brazilian Counsel Decl. ¶ 60. Accordingly, there is not sufficient time to register securities with the Securities and Exchange Commission as would be required outside of the section 1145 exemption.  The requested registration exemption will provide comfort that the Directed Parties' participation in the offer, sale, issuance, and resale of the debt instruments is in compliance with applicable law and has been authorized by a U.S. court.  Accordingly, all parties-in-interest, including the Existing Noteholders, will substantially benefit from the requested exemption relief.

### C.  Enforcement of the Brazilian RJ Plan and Brazilian Confirmation Order Is Not Manifestly Contrary to U.S. Public Policy

126.    Section 1506 provides that a bankruptcy court may decline to grant relief requested if the action would be "manifestly contrary to the public policy of the United States."  11 U.S.C. §§ 1506, 1517(a).  This public policy exception is "construed narrowly."  *In re Vitro, S.A.B. de CV*, 473 B.R. at 122; *In re Sino-Forest Corp.*, 501 B.R. 655, 665 (Bankr. S.D.N.Y. 2013) ("But this public policy exception is narrowly construed."); *In re Toft*, 453 B.R. 186, 195 (Bankr.

S.D.N.Y. 2011) ("[T]hose courts that have considered the public policy exception codified in [section] 1506 have uniformly read it narrowly and applied it sparingly."). Importantly, the result achieved in a foreign proceeding does not have to be identical to that in the United States. Rather, "[t]he key determination . . . is whether the procedures used [in the foreign proceeding] meet our fundamental standards of fairness." *In re Vitro S.A.B. de CV*, 701 F.3d at 1069 (quoting *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010)); *In re Oi S.A.*, 587 B.R. at 269; *see also In re Bd. of Dirs. of Telecom Arg. S.A.*, No. 05-17811 (BRL), 2006 Bankr. LEXIS 483, at *73 (Bankr. S.D.N.Y. Feb. 24, 2006) ("Comity does not require that the foreign law be a carbon copy of our law; rather, [it] must not be repugnant to American laws and policies.") (internal citations and quotations omitted).

127.     Approval of the Brazilian RJ Plan is consistent with the public policy of the United States. The Brazilian Bankruptcy Law provides robust procedural protections to all creditors, wherever located, including the opportunity to object, appeal, negotiate, and vote on a plan of reorganization. *See supra* ¶ 103. Thus, it is no surprise that courts have repeatedly found that "Brazilian bankruptcy law meets our fundamental standards of fairness and accords with the course of civilized jurisprudence."[23] Moreover, recognition and enforcement of the Brazilian RJ Plan and

---

[23]  *In re Rede Energia S.A.*, 515 B.R. 69, 98 (Bankr. S.D.N.Y. 2014). *See also In re Oi S.A.*, No. 23-10193 (JPM) (Bankr. S.D.N.Y. June 17, 2024) [ECF No. 42] ¶ F (finding that the terms of the Brazilian RJ plan and the process for solicitation of votes on and confirmation of the Brazilian RJ plan "provided creditors and parties in interest with appropriate due process and were not manifestly contrary to U.S. public policy"); *In re Serviços de Petróleo Constellation S.A.*, No. 18-13952 (MG) (Bankr. S.D.N.Y. May 3, 2022) [ECF No. 288] ¶ E (finding that a Brazilian plan of reorganization, the process for solicitation of votes on, and confirmation of, the plan, "in each case before the Brazilian Court, provided creditors and parties in interest with appropriate due process and were not manifestly contrary to U.S. public policy"); *In re Serviços de Petróleo Constellation S.A.*, No. 18-13952 (MG) (Bankr. S.D.N.Y. Dec. 5, 2019) [ECF No. 192] ¶ O (same); *In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 15, 2018) [ECF No. 277] (same); *In re Aralco S.A. Indústria e Comércio*, No. 15-10419 (REG) (Bankr. S.D.N.Y. Apr. 21, 2015) [ECF No. 22] (finding that granting full force and effect to a Brazilian plan of reorganization and related confirmation order is consistent with the public policy of the United States); *In re OAS S.A.*, 533 B.R. 83, 103 (Bankr. S.D.N.Y. 2015) (noting that "Brazil has a comprehensive bankruptcy law that in many ways mirrors our own" and agreeing with the *Rede* decision that Brazilian bankruptcy law is not contrary to U.S. public policy).

the Brazilian Confirmation Order will advance the public policy objectives of sections 1501(a) and 1508 of the Bankruptcy Code. The purpose of chapter 15, as noted in section 1501(a), is to facilitate cross-border insolvency cases, and section 1508 directs courts interpreting chapter 15 to consider its international origins. 11 U.S.C. §§ 1501(a), 1508. Nothing has transpired in the course of the Brazilian Proceeding or arises under the Brazilian Bankruptcy Law that touches upon the policy concerns underlying section 1506 and thus the Court may grant the Requested Relief.

*        *        *

## RESERVATION OF RIGHTS

128. The Foreign Representative hereby reserves his right to supplement this Recognition Motion with additional or supplemental pleadings prior to the hearing on the Recognition Motion.

## NOTICE

129. Notice of this Motion has been provided to the parties set forth in **Exhibit A** attached hereto (the "**Notice Party List**"). The Foreign Representative respectfully submits that no other or further notice is required.

## NO PRIOR REQUEST

130. No previous request for the relief requested herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Petitioner respectfully requests that the Court: (i) enter the Proposed Order, upon notice and a hearing, substantially in the form attached hereto, and (ii) grant such other and further relief as the Court deems just and proper.

55

Dated: October 15, 2024
Houston, Texas

/s/ Charles R. Koster

**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email:  charles.koster@whitecase.com

John K. Cunningham (*pro hac vice* pending)
Ricardo M. Pasianotto (*pro hac vice* pending)
David Kim (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  jcunningham@whitecase.com
           ricardo.pasianotto@whitecase.com
           david.kim@whitecase.com

Richard S. Kebrdle (*pro hac vice* pending)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email:  rkebrdle@whitecase.com

*Attorneys for Antonio Reinaldo Rabelo Filho,*
*as Petitioner and Foreign Representative*

## <u>VERIFICATION OF CHAPTER 15 PETITION</u>

Pursuant to 28 U.S.C. § 1746, I, Antonio Reinaldo Rabelo Filho, declare under penalty of perjury under the laws of the United States of America as follows:

I am the authorized foreign representative of the Chapter 15 Debtor with respect to the Brazilian Proceeding for purposes of this Chapter 15 Case.  I declare under penalty of perjury that the factual contents of the foregoing Recognition Motion as well as the factual contents of each of the attachments and appendices thereto, are true and accurate to the best of my knowledge, information, and belief, and I respectfully represent as follows:

I reside at Rua Barão da Torre, 550, Apt. 201, Ipanema, Brazil.  I hold a law degree from the Federal University of Bahia, a post-graduate degree in business law from IBMEC/RJ, and a Master's degree in tax law from Pontifical Catholic University of São Paulo.  I began my career at PWC Brasil, from where I left to work for the Oi Group ("Oi") in 2000.  In Oi, I held positions in the financial and legal departments and served on the tax legal board from 2007 to 2017.  Since 2017, I started my own law firm practice.  Additionally, I participated in the Board of Directors of the Main Technical Associations of the Telecommunications Sector.  I am also a member of the National and State Commissions of Tax Law and Judicial Reorganization and Bankruptcy of the Brazilian Bar Association.

In particular, I served as the foreign representative of Oi's chapter 15 proceeding in front of the United States Bankruptcy Court for the Southern District of New York and the judicial reorganization proceeding in front of the United Kingdom court, where I negotiated with various creditors and implemented Oi's restructuring plan internationally in Brazil, USA, Netherlands, and Portugal.  I also acted as the foreign representative of the chapter 15 cases for Americanas S.A.

and its affiliates, as well as InterCement Participações S.A. and its affiliates, before the United States Bankruptcy Court for the Southern District of New York.

On June 20, 2023, the Chapter 15 Debtor appointed me as the foreign representative of the Brazilian Proceeding and authorized me to file the Recognition Motion and to act on its behalf in the Chapter 15 Case.  Accordingly, I am fully authorized and take related action as the Foreign Representative.

Unless otherwise indicated, all facts set forth in this Recognition Motion are based upon: (a) my review of relevant information, data and documents (including oral information) furnished to me by the Chapter 15 Debtor and its legal advisors; (b) information supplied to me by the Chapter 15 Debtor's officers, directors, employees and professionals; or (c) my analyses of the information I have received on the Chapter 15 Debtor's operations and financial condition.  I have also been kept abreast of major discussion with stakeholders, including the Chapter 15 Debtor's primary financial creditors and its shareholders.  If I am called to testify, I will do so competently and based on the facts set forth herein.

Dated: October 15, 2024

Respectfully submitted,

Foreign Representative of the Chapter 15 Debtor